COURTNEY, APPELLEE, *v.*
COURTNEY, APPELLANT.

(No. 5-83-21—Decided April 13, 1984.)

*Mrs. Arnette Courtney, pro se.*

*Ms. Helen M. Kendrick,* for appellant.

*Mr. Ralph D. Russo,* assistant county prosecutor, for Hancock Bureau of Support.

*Per Curiam.* This is an appeal by the defendant-contemnor, James A. Courtney, from the following judgment of the Court of Common Pleas of Hancock County entered March 17, 1983:

"This cause came on for hearing on the 16th day of March, 1983, whereupon the Defendant James A. Courtney was brought before the court on a Bench Warrant issued for his arrest for failure to appear previously on a written charge of Contempt of Court.

"Thereupon the court being fully advised in the premises and the Defendant being given an opportunity to show cause and failing to do so, it is hereby ordered, ajudged [*sic*] and decreed as follows:

"1. That the defendant is found to be in contempt and ordered to serve ten days (10) in the Hancock County Jail and pay a fine of One Hundred Dollars ($100.00) and the cost of these proceedings.

"2. That the sentence and fine are suspended on the condition that the defendant begin making payments in the amount of Sixty Dollars and no/100 ($60.00) per week, plus 2% poundage, commencing April 15, 1983, and within ninety days, defendant is ordered to pay Seventy Dollars & no/100 ($70.00) per week, plus 2% poundage, and that Ten

Dollars and no/100 ($10.00) is to be applied towards arrearages.

"3. That this cause is continued for forty five days (45), and that the defendant is to kept [sic] the Bureau of Support notified of his current address.

"All until further order of the court."

The file of the divorce action to which these proceedings are incidental discloses that the defendant and his former wife were divorced on October 2, 1979, with the defendant ordered to make child support payments; that some difficulties the defendant had had in 1980 reference these support payments were resolved on or before July 16, 1982; and that at some time prior to December 7, 1982, there was placed in the common pleas court file for the divorce case, bearing the defendant's name and street address but erroneously addressed to "Caton, Ohio" rather than "Canton, Ohio," a paper headed: "HANCOCK COUNTY BUREAU OF SUPPORT" with its address and phone number, containing the number of the divorce case, reading:

"You are hereby notified that you are in arrears in your payments as ordered by this court. You must appear in common pleas court on the date and time indicated below. Failure to comply will bring forth a bench warrant for your arrest."

Below this notice appears the statement, "Your appointment is 12/07/82 3:15 pm." There is nothing indicating whether this notice was ever mailed to or received by the appellant. There is also nothing in the record of the trial court showing that anything happened or did not happen on December 7, 1982. However, on December 9, 1982, a bench warrant issued from the trial court directed to the Sheriff of Hancock County for appellant's arrest. On March 17, 1983, the return of the Sheriff of Hancock County was filed reflecting that the sheriff arrested the defendant on March 16, 1983. Although the case file does not reflect same, the appellant asserts, and it is not denied, that he was arrested on the bench warrant by a deputy sheriff of Stark County on December 7, 1982, incarcerated in the Stark County Jail and remained imprisoned therein for three days before being transported to Hancock County where on March 16, 1983, he was "escorted to the Hancock County Common Pleas Court."

The transcript of proceedings reflects that on March 16, 1983, the appellant did appear "before the Honorable Robert D. Walker, Judge of said court," and that "Mrs. Fredia Smith, Bureau of Support, Hancock County," and "Mr. Karl Kingery, Deputy, Hancock County, Ohio," were also present. As the proceedings are relatively short and, more vividly than any paraphrase could, portray the claims of the appellant on this appeal, we quote them in their entirety:

"WHEREUPON, with counsel of record present, the proceedings commenced, to-wit:

"THE COURT: All right. How far behind is he?

"MRS. SMITH: $9,952.06. $600.00 is owed to the Welfare Department.

"THE COURT: Just $600.00?

"MRS. SMITH: Yes.

"THE COURT: Is she working?

"MRS. SMITH: I don't know if she is or not.

"THE COURT: Where do you work?

"MR. COURTNEY: I don't, I haven't worked for almost two years.

"THE COURT: Why not?

"MR. COURTNEY: I haven't been able to find a job.

"THE COURT: You what? Why haven't you worked?

"MR. COURTNEY: Because I haven't been able to find a job.

"THE COURT: You had a job with Sentle?

"MR. COURTNEY: Yes, sir. Got laid off.

"THE COURT: I don't think that's exactly what it said.

"MR. COURTNEY: I know, they made me sign a piece of paper and after I done left there for awhile, they put down a voluntary quit.

"I was laid off from there. I was not fired or quit.

"THE COURT: What are you living on?

"MR. COURTNEY: G.R.

"THE COURT: What?

"MR. COURTNEY: General Relief. $91.00 a month.

"THE COURT: Who pays your rent?

"MR. COURTNEY: I do.

"THE COURT: Out of that?

"MR. COURTNEY: $35.00 a month to my sister for living in her camper trailer illegally.

"THE COURT: How long have you had him?

"THE DEPUTY: We just got him, sir.

"THE COURT: Today?

"THE DEPUTY: Yes, sir, just came in.

"THE COURT: Do you still have the four Series E. Bonds?

"MR. COURTNEY: No.

"THE COURT: What happened to them?

"MR. COURTNEY: I had to use them.

"THE COURT: Yet you agreed to hold them until the kids were eighteen?

"MR. COURTNEY: Yes, sir, I did. I'm planning on replacing - - -

"THE COURT: What?

"MR. COURTNEY: I'm planning on replacing them as soon as I get a job.

"THE COURT: What you ought to be doing is supporting these kids.

"Only $600.00; is that right?

"MRS. SMITH: Yes, sir.

"THE COURT: We've been looking for you for a long time.

"MR. COURTNEY: I've been in Ohio.

"THE COURT: Canton?

"MR. COURTNEY: Right. Been in Canton since April of '81.

"THE COURT: Where do you live in Canton?

"MR. COURTNEY: 34th Street, Northeast. I did till my sister put her trailer up for sale. Now I have to find a place to live.

"THE COURT: Are you going to go back to Canton or to Portage?

"MR. COURTNEY: Go back to Canton.

"THE COURT: Are you remarried?

"MR. COURTNEY: No, sir.

"THE COURT: You were for awhile?

"MR. COURTNEY: No, sir.

"THE COURT: Has he been processed, Sergeant?

"THE DEPUTY: I was just in the process of doing this when they asked me to bring him over.

"THE COURT: I'm going to order that you serve ten days in the Hancock County Jail, pay a fine of $100.00.

"I'm going to suspend that on condition starting with the 15th day of April and every Friday thereafter, that he makes payment in the sum of $50.00 per week, which I think is the child support ordered; is that correct?

"MRS. SMITH: We have $60.00.

"THE COURT: $60.00, that's fine. That's what it will be plus $10.00 to be applied toward — well, not at the outset, we'll give him ninety days after that and then it goes to $60.00 plus poundage. The additional $10.00 to be applied toward the arrearage.

"He will be completing his processing over there first, Sergeant, and I'm going to let him go on his own recognizance. We'll review it within forty-five days so that if there's any and, ifs or buts about it, we'll know about it.

"MRS. SMITH: Would Mr. Court-

ney keep us advised of his current address?

"THE COURT: He will let us know exactly where he is at all times. We got four kids here and they're entitled to be supported and we're going to see to it that he is. Do you understand that order?

"MR. COURTNEY: Yes, sir.

"THE COURT: Take him over for an O.R. and then complete his proceeding. He's not to be released until you complete your processing.

"THE DEPUTY: Yes, sir.

"THE COURT: I'm not going to put him in at $26.00 a day, but you can be assured, Sergeant, that he will be over there if he doesn't pay his support and you'll have him for ten solid days, and if he doesn't pay it after that another ten, and if I have to keep him there for the rest of his whatever.

"You let me know.

"MRS. SMITH: Yes, sir.

"(COURT ADJOURNED.)"

On this state of the record the appellant assigns error in the seven particulars hereinafter set forth.

I

"Appellant was denied due process of law in that the form supposedly sent by someone was insufficient notice of a pending hearing on non-support contempt."

The contempt, if any, here involved was indirect contempt described under R.C. 2705.02(A) as "[d]isobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or an officer."

It has long been the established law of the United States as expressed in *In re Oliver* (1948), 333 U.S. 257, 275, that constitutional procedural due process "requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a

chance to testify and call other witnesses in his behalf, either by way of defense or explanation." See, also, *In re Green* (1962), 369 U.S. 689, 691-692; *Culberson* v. *Culberson* (1978), 60 Ohio App. 2d 304, 306 [14 O.O.3d 265]; and R.C. 2705.03.

Here, notwithstanding the trial court's recital in its journal entry of "a written charge of contempt of Court," the file is devoid of any charge of contempt made against the appellant and the notice under the heading of the Hancock County Bureau of Support even if served and received was not a notice issued by or from the court of common pleas, its clerk, or by anyone having the authority to give notice of a charge of contempt. In *State, ex rel Hitchcock,* v. *Derck* (Aug. 18, 1983), Paulding App. No. 11-83-1, unreported, we held that a bureau of support has no judicial power or function, is essentially an administrative satellite of a common pleas court, and that the judicial acts involved in case of default in support payments to a bureau of support are performed by the court when appropriately initiated by the prosecuting attorney. See, also, *Shiltz* v. *Shiltz* (March 16, 1982), Highland App. No. 453, unreported, holding that a bureau of support has no authority to institute contempt proceedings.

Moreover, the bureau of support form did not even purport to give notice to the appellant that he was being charged with contempt or would have to answer to contempt charges.

The bureau of support form was wholly inadequate from the standpoint of due process as notice of a hearing on contempt charges and fails to support a finding of contempt. The first assignment of error is well-taken and the error was prejudicial to the appellant requiring reversal.

II

"Appellant was denied due process of law, and the trial court lacked

jurisdiction over his person, in that service of process was not in compliance with the Ohio Rules of Civil Procedure."

Although process served in the manner prescribed by the Ohio Rules of Civil Procedure might, in a given case, satisfy due process requirements as to contempt charges and proceedings thereon, it does not necessarily follow that the Ohio Rules of Civil Procedure establish an exclusive means of giving such notice. In fact, Civ. R. 1(C)(7) excepts special statutory proceedings from the operation of the Rules of Civil Procedure. Contempt proceedings are prescribed by special statutes and, in no event, constitute civil actions in the context of these rules. Appellant was denied due process of law, at the least, because there was either no charge of contempt, no notice of the contempt proceedings, or notice of same was inadequate, to satisfy due process requirements. He was not denied due process because notice was not served in compliance with the Ohio Rules of Civil Procedure. The second assignment of error is without merit.

## III

"The trial court deprived appellant of rights of notice and an opportunity to be heard when it issued a bench warrant for his arrest on December 7, 1982."

R.C. 2705.03 prescribes:

"In cases under section 2705.02 of the Revised Code, a charge in writing shall be filed with the clerk of the court, an entry thereof made upon the journal, and an opportunity given tó the accused to be heard, by himself or counsel. This section does not prevent the court from issuing process to bring the accused into court, or from holding him in custody, pending such proceedings."

We find no reported case in Ohio respecting the right of notice and an opportunity to be heard before a bench warrant is issued in a contempt proceeding. However, though this statute purports to "not prevent" a court from

issuing a bench warrant "to bring the accused into court, or from holding him in custody, pending such proceedings," in no event does the statute purport to give authority for the issuance of such process unless "a charge in writing shall be filed with the clerk of the court, [and] an entry thereof made upon the journal," thus establishing the fact and identity of the "accused" against whom process may issue.

Without making any determination as to the necessity of notice or hearing prior to the issuance of the bench warrant herein, we find, there being nothing in the record to show that a charge of contempt was ever filed against the appellant, that, for the absence of a charge as prescribed, the necessary foundation for the issuance of a bench warrant did not exist. So considered, the third assignment of error is well-taken, constituting error prejudicial to the appellant.

## IV

"The trial court abused its discretion in finding appellant in contempt of court without first conducting a plenary hearing in compliance with O.R.C. 2705.05."

R.C. 2705.05 prescribes, among other things, that the trial court shall "hear any answer or testimony which the accused makes or offers." *In re Oliver, supra; In re Green, supra;* and *Culberson* v. *Culberson, supra,* set forth that procedural due process requires that the accused shall have a reasonable opportunity to meet the charges against him by way of defense or explanation and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation. See, also, *Simpson* v. *Simpson* (1969), 19 Ohio App. 2d 167 [48 O.O.2d 272].

Examination of the transcript of proceedings, hereinbefore quoted in full, discloses that the court questioned the appellant as to his employment, his source of income, his rental expenses,

his disposition of some Series E Bonds, his residence, and marital status, and determined his sentence and conditions thereon, but at no time did the trial court give the defendant any opportunity to meet any charge of contempt by way of defense or explanation, nor did it give him any chance to testify and call other witnesses in his behalf, either by way of defense or explanation.

In our opinion the appellant was not given a hearing of the type required either by statute or by constitutional due process. The fourth assignment of error is well-taken constituting prejudicial error.

## V

"The trial court abused its discretion in finding appellant in contempt of court, as good faith inability to comply with an order is a defense to a charge of contempt."

It is well established in the law of Ohio, as well as other jurisdictions, that a person charged with contempt for the violation of a court order may defend by proving that it was not in his power to obey the order. See, e.g., State v. Cook (1902), 66 Ohio St. 566. The appellant was under court order to pay $60 per week for current support of his minor children plus $10 per week to be applied toward arrearage in support payments. Although appellant had no opportunity to meet his burden of proving his inability to make these payments, questions by the trial judge disclosed that he was unemployed, receiving only $91 per month general relief, from which he was paying $35 per month rent, leaving a balance of $56 per month for all his other expenses. There was no evidence to the contrary. Simple arithmetic and common sense disclose that he had no ability to make the support payments previously ordered by the court and, as asserted under the fifth assignment of error, the trial court abused its discretion in finding him guilty of contempt of court in these circumstances.

## VI

"The trial court erred in imposing what was in effect an excessive punitive sentence while finding appellant in civil contempt."

The trial court's sentence on its finding of contempt was that the defendant serve ten days in jail and pay a fine of $100 and costs, with the sentence being suspended on the condition that the defendant begin making payments of $60 per week, plus two percent poundage commencing on April 15, 1983 (approximately one month from the day of sentence), and on the further condition that within ninety days defendant pay $70 per week, plus two percent poundage, of which $10 per week is to be applied towards arrearages.

On the evidence in the record it would be just as impossible for the defendant from his own resources to meet the conditions for suspension of his sentence as it was for him to make the support payments in the first place.

However, the sentence of ten days in jail and a fine of $100 was fully within the limits permitted by R.C. 2705.05 for civil contempt, and the conditions of suspension of the sentence constituted, in legal effect, provisions permitting the purging of the contempt, equivalent to but no greater a burden than were the original support provisions. The trial court did not impose an excessive punitive sentence based on the contempt found, but based on the facts and circumstances heretofore found or appearing had no authority to impose any sentence.

The assignment of error is technically not well-taken.

## VII

"Appellant, as an indigent, was denied due process of law by the court's failure to inform him of his right to appointed counsel and by the court's failure to appoint counsel."

As is clear from the cases in the Supreme Court of the United States

cited heretofore under the first and fourth assignments of error, one accused of contempt has the right to be represented by counsel. The Supreme Court of Ohio held specifically in *In re Calhoun* (1976), 47 Ohio St. 2d 15 [1 O.O.3d 10], as one reason to deny a habeas corpus petition, that due process requirements did not give a right to be provided with counsel to one charged with contempt for failure to obey a child support order. This was the court's holding, notwithstanding that *Argersinger* v. *Hamlin* (1972), 407 U.S. 25, 37, guaranteeing counsel for indigents facing jail on misdemeanor charges, which was decided some four years earlier, was considered. Appellant, by virtue of the Supreme Court's decision in *Lassiter* v. *Department of Social Services* (1981), 452 U.S. 18, would have us hold that an indigent charged with indirect contempt where, if he loses, he may be deprived of his physical liberty, is entitled to court-appointed counsel, and must be informed of such right, notwithstanding *In re Calhoun*.

It is not our function to overrule the Supreme Court of Ohio and we do not do so. We must recognize, however, when any decision of the Supreme Court of the United States supersedes a previous decision of the Supreme Court of Ohio, on the same issue, either directly or by implication. Examination of *Lassiter* discloses that it recognized a generalization, as well as a presumption, that "an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty." *Id.* at 26-27. *Lassiter* neither held this presumption conclusive nor did it apply it to contempt cases. Thus, we conclude that *Lassiter* did not overrule *Calhoun* directly or by implication. We are, of course, aware of *Schock* v. *Sheppard* (1982), 7 Ohio App. 3d 45, but disagree with that decision as to the precedent which we must follow. In view of *Calhoun* we must conclude that the trial court's failure to advise appellant as to a right of appointed counsel, or to appoint counsel for him, did not constitute error prejudicial to the appellant, requiring reversal.

We are, of course, cognizant of our decision in the case of *In re Belden* (Dec. 29, 1983), Allen App. No. 1-82-30, unreported, where we held the alleged contemnor entitled to appointed counsel. That case, however, is distinguishable on its facts.

On April 13, 1983, the same day that appellant filed his appeal, he also filed a motion to modify the prior support order and, as the record shows, the trial court on May 6, 1983, entered its judgment putting into effect an agreement suspending his support obligations during the period he receives general relief. Appellee contends that this action by the trial court moots many of the issues heretofore raised by the appeal. However, the trial court did not purport to set aside any action previously taken and the judgment and sentence for contempt herein appealed still stand until reversed, as well as does appellant's obligation to pay support as originally ordered, at least until the date of such suspension on May 6, 1983. Our conclusion is that no issues here raised have been mooted by the action of May 6, 1983.

For the various errors of the trial court heretofore found, each of which was prejudicial to the appellant, the judgment of that court is reversed and vacated. There having been no contempt charges filed we do not remand for either new trial or further proceedings.

*Judgment reversed.*

MILLER, P.J., GUERNSEY and COLE, JJ., concur.