WATSON; **Mahoning County Child Support Enforcement Agency, Appellee,**

v.

**WOLSONOVICH, Appellant.**

[Cite as *Watson v. Wolsonovich* (1996), 112 Ohio App.3d 565.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 95 C.A. 77.

Decided July 12, 1996.

*Christina Marie Bond,* for appellee.

*Martin S. Hume,* for appellant.

GENE DONOFRIO, Judge.

Defendant-appellant, Nicholas P. Wolsonovich, presents this timely appeal from a decision of the Mahoning County Common Pleas Court, Domestic Relations Division, approving and adopting a report of the referee, wherein appellant was found to be in contempt for failure to pay child support and was ordered to serve a thirty-day jail sentence.

The marriage of appellant and appellee, Deborah Watson, was dissolved by decree of divorce journalized on August 29, 1983. A parent-child relationship pursuant to R.C. 3111.01 through 3111.19 existed between the parties and their two minor children, Deborah Wolsonovich, born September 12, 1980, and Nicholas Wolsonovich, born March 30, 1982. Appellee was designated the residential parent for both children. At the time of the parties' divorce, appellant was not employed, and therefore no child support was ordered. The divorce decree provided that should appellant become employed, he was to pay to appellee, through the Mahoning County Bureau of Support, the sum of $125 per month per child as and for child support. Appellant was further ordered to pay extraordinary medical expenses for the minor children in excess of $15 per month, per child.

On September 8, 1989, a hearing was held before the court's referee pursuant to appellee's motion for the establishment of child support. By report of referee journalized September 13, 1989 and adopted by the trial court on September 27, 1989, appellant was found to be the recipient of workers' compensation benefits of

$140 per week, and, based upon those benefits, he was ordered to pay child support at the rate of $87 biweekly, beginning September 9, 1989, by withholding order to the Ohio Bureau of Workers' Compensation.

The records of appellee Mahoning County Child Support Enforcement Agency (hereinafter "MCCSEA") indicate that as of December 1, 1994, appellant owed a past due and unpaid child-support arrearage totalling $7,621.92. The record further shows that despite the entry of the child-support order in 1989, appellant made no payments for child support in the years 1989, 1990, 1991, 1992, 1994, or 1995.

In 1993, a lump-sum payment from the Bureau of Workers' Compensation to appellant was intercepted by the MCCSEA and approximately $4,300 was paid to the Department of Human Services toward the arrearage. Appellant did not dispute the amount of the arrearage set forth in the present motion or the history of child-support payments presented.

On December 8, 1994, a summons and order to appear, together with a motion to show cause why appellant should not be held in contempt, a motion to modify, and a petition for Option for Parenting Training and Support Program (hereinafter "OPTS"), were filed by the MCCSEA.

A hearing was held pursuant to the aforementioned motions on February 10, 1995, after which the referee filed his report on February 21, 1995. The report found that (1) pursuant to a judgment entry journalized October 5, 1989, appellant was subject to a court order of support; (2) as of December 1, 1994, appellant failed to make any voluntary payments in accordance with the order; (3) in the years 1989–1995, the only support appellant paid was when the MCCSEA intercepted a lump-sum payment by the Bureau of Workers' Compensation in 1993.

The report of the referee also set forth that appellant did not consider himself eligible for any form of work and had declined entry into the OPTS Program. The referee's report further set forth that when asked why he failed to make any payments from his workers' compensation benefits as ordered, appellant stated that if he had done so the payments would have decreased his income to the point where he would have been eligible for welfare. The referee noted that when he asked appellant again why he did not pay child support from the workers' compensation benefits, appellant repeated the above attributed statement.

The report further noted that appellee submitted various documents at the contempt hearing which, according to the referee, established that appellant had never made child-support payments except involuntarily in the matter, that appellant's physical condition was not such as to prohibit him from becoming employed in some form (as evidenced by the fact that his several requests for SSI

benefits had been denied), and that even when appellant had the ability to pay support he did not do so.

In the report, the referee recommended that appellant be ordered to serve thirty days in jail.

Appellant filed timely objections to the report of the referee and attached an affidavit that stated that appellant's back condition had caused him "difficulty in working." Appellant argued that the medical report described his condition in such a way as to suggest that employment would be impossible. Appellant further objected to the referee's characterization that appellant's condition "is not such as to prohibit him from being employed in some form."

On April 5, 1995, the trial court approved and adopted the report of referee filed on February 21, 1995. This appeal followed.

Appellant's sole assignment of error is:

"The trial court abused its discretion by sentencing the Defendant–Appellant to a term of incarceration where the undisputed evidence reflected that the Defendant–Appellant was unemployed, had no assets, no income and suffered from a medical condition which rendered him unable to return to any type of job which would require him to do any type of bending or lifting activities."

Appellant cites *Courtney v. Courtney* (1984), 16 Ohio App.3d 329, 16 OBR 377, 475 N.E.2d 1284, for the proposition that it is well-established law in Ohio that a person charged with contempt for failure to obey a court order may defend by proving it was not within his power to obey the order.

Appellant maintains that he suffered from a bona fide medical condition that prevented him from obtaining gainful employment. Appellant further maintains that he submitted uncontroverted medical evidence that he suffered from arachnoiditis, an uncommon condition characterized by chronic inflammation and thickening of the membranes that cover and protect the spinal cord. Dr. William Parrish opined:

"I feel that given his history and the present diagnosis, which by history is that of arachnoiditis, he will unlikely be able to return to any type of job activities which would require him to do any type of bending or lifting activities on a repetitive basis. Likewise, he complains of an increased pain with sitting, standing, walking for any significant amount of time."

Based upon Dr. William Parrish's evaluation, appellant argues that there is no dispute that his condition was real. Further, appellant did not purposefully become disabled for the purpose of avoiding his child-support obligation. Therefore, appellant argues that a finding of contempt and imposition of a jail sentence

were not supported by the evidence and were an abuse of discretion by the trial court.

■ An abuse of discretion connotes more than an error of law or judgment; it implies an attitude that is "unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142. When applying the abuse-of-discretion standard, a reviewing court should not freely substitute its judgment for that of the trial court.

R.C. 2705.02 speaks of acts in contempt of court:

"A person guilty of any of the following acts may be punished as for a contempt:

"(A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or an officer[.]"

■ The court has power pursuant to the laws of the state of Ohio to order individuals to pay support for their children. The person who fails to comply with an order has the burden to prove the person's inability to pay, and it is not a prerequisite to a finding of contempt that the violation of the court be purposeful, willing, or intentional. *Pugh v. Pugh* (1984), 15 Ohio St.3d 136, 15 OBR 285, 472 N.E.2d 1085: The Supreme Court of Ohio in *Windham Bank v. Tomaszczyk* (1971), 27 Ohio St.2d 55, 56 O.O.2d 31, 271 N.E.2d 815, at paragraphs two and three of the syllabus, held:

"2. The purpose of contempt proceedings is to secure the dignity of the courts and the uninterrupted and unimpeded administration of justice.

"3. The purpose of sanctions in a case of civil contempt is to compel the contemnor to comply with lawful orders of a court, and the fact that the contemnor acted innocently and not in intentional disregard of a court order is not a defense to a charge of civil contempt."

The court in *Tomaszczyk* cited *McComb v. Jacksonville Paper Co.* (1949), 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599, where the United States Supreme Court stated at 191, 69 S.Ct. at 499, 93 L.Ed. at 604:

" 'The absence of willfulness does not relieve from civil contempt. Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance.  * * *  *The decree was not fashioned so as to grant or withhold its benefits dependent on the state of mind of respondents.* It laid on them a duty to obey specified provisions of the statute. An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently. The force and vitality of judicial decrees derive from more robust sanctions.' (Emphasis added.)"

■ When appellant was asked at the contempt hearing why he never paid child-support payments from his workers' compensation checks, he stated that to do so would have decreased his income to the point where he would have been eligible for welfare. At that point, a prima facie case of contempt was made.

The referee noted in his report that he had recommended the OPTS program to appellant as an alternative to incarceration. The appellant blatantly refused entry into the program and stated he did not consider himself eligible for work. The referee further noted that the evidence demonstrated that the defendant was not so disabled that he was precluded from working. In fact, the report noted that appellant's several requests for Supplemental Security Income ("SSI") had been denied. Appellant was found not to be disabled under the standards of the Social Security Administration. The referee's finding that appellant was capable of employment of some sort was supported by the record. In addition, there was evidence that even when appellant had the ability to pay child support through the receipt of workers' compensation benefits, he did not do so.

It was clearly established by the record that appellant was in contempt for failure to pay support. Based upon R.C. 2705.05(A)(1), the judgment of the trial court was proper.

Appellant's sole assignment of error is without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

O'NEILL, P.J., and COX, J., concur.