OPINION
This timely appeal arises from the judgment of the Mahoning County Court of Common Pleas, Domestic Relations Division, finding Appellant in contempt of court for failure to pay child support. For the following reasons, the judgment of the trial court is affirmed in part, reversed and remanded in part for further proceedings according to law and consistent with this Court's opinion.
Appellant, Daniel T. Nichol, and Appellee, Anna D. Jannetti, f.k.a Anna D. Nichol, were married in Mahoning County on April 7, 1979. Three children were born of the marriage: Jason Daxx Nichol, born April 1, 1981; Deanna Danielle Nichol, born August 23, 1984; and Aaron Dominic Nichol, born April 28, 1986. On June 13, 1991, the marriage was dissolved by decree of the Mahoning County Court of Common Pleas, Domestic Relations Division. The original decree named Appellee as residential parent and ordered Appellant to pay child support of $173.34 per child per month for a total of $520.02 per month. Although Appellant's income decreased significantly following the decree, Appellant did not move the trial court for a reduction in his child support obligations.
On January 12, 1993, Appellee filed a motion for contempt of the support order, alleging that Appellant owed $4,227.44 in past due child support. On May 21, 1993, the trial court found that Appellant was not in contempt, but that he was in arrears in his support payments. The trial court increased Appellant's monthly support obligation to $736.67 per month.
On October 19, 1994, Appellee filed a second motion seeking a contempt order. On December 29, 1994, the trial court found Appellant in contempt and sentenced him to 30 days in jail. The court then suspended the jail sentence as long as Appellant made his monthly support payments, which were reduced to $570.00 per month. The trial court made numerous findings of fact, including finding that Appellant had purchased an acre of land the prior year for $6,000.00, that Appellant had been making monthly payments on a boat and a camper and that Appellant owed $55,000.00 in back taxes to the Internal Revenue Service.
Appellant complied with the child support order for a few months. The matter came up for review in August, 1995. A referee found that Appellant had stopped making support payments in March of 1995. The referee recommended the imposition of the suspended jail term which stemmed from Appellant's contempt conviction. On November 11, 1995, the trial court rejected the referee's recommendation and did not reimpose the jail term. The matter was continued for later review.
On February 28, 1996, after another review hearing concerning Appellant's compliance with the child support order, the trial court found that Appellant was in contempt of court. The court found that Appellant was in arrears an additional $2000.00 since the last review hearing but that his 30 day jail sentence should again be suspended provided that he consistently make his monthly support payments.
On April 21, 1997, Appellee filed a third motion seeking contempt, alleging that Appellant was $13,888.04 overdue in child support payments. A contempt hearing was held on July 29, 1997, where Appellant testified that his business was doing poorly, that he could not determine his income for the first half of 1996, that Appellee had been denying him visitation of his children for approximately two years and that he intended to but had not yet filed a motion to reduce his child support obligations. Appellant also testified that his debt to the IRS had increased to about $150,000.00. Appellant testified that his boat and his car had been repossessed but that he still owed deficiency balances on both of them. Appellant also testified that he paid for various needs of the children, such as buying a saxophone, paying for a trip to Washington, D.C. and paying for camp.
On the day of the hearing, the trial court found Appellant guilty of contempt and sentenced him to 30 days in jail, with 10 days to be served and 20 days suspended. The court did not provide an opportunity for Appellant to purge the contempt order. On the same day Appellant filed his notice of appeal. We granted Appellant a stay of execution of the sentence pending the disposition of this case on appeal.
Appellant raises two assignments of error in his brief before us. Appellee did not file a reply brief. The Mahoning County Child Support Enforcement Agency (MCCSEA) filed a brief as amicus curiae.
Appellant's first assignment of error alleges:
 "THE TRIAL COURT ERRED IN FAILING TO GIVE DEFENDANT-APPELLANT AN OPPORTUNITY TO PURGE HIMSELF OF THE CIVIL CONTEMPT."
His second assignment of error alleges:
 "THE TRIAL COURT'S FINDING THAT DEFENDANT-APPELLANT WAS IN CONTEMPT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHERE APPELLANT PRESENTED UNCONTROVERTED EVIDENCE OF HIS INABILITY TO PAY OR COMPLY WITH THE ORDER OF THE COURT."
As a finding of contempt necessarily must precede a sentence for such disobedience, logic dictates that we address Appellant's second assignment of error first.
In his second assignment of error, Appellant argues that inability to comply with a court order is a valid and complete defense to a contempt charge. Appellant acknowledges that he bears the burden of alleging and proving an inability to comply. He contends that he presented evidence of extraordinary financial obligations, but that this evidence went totally unrecognized by the court. Appellant states that he presented evidence of a substantial debt to the IRS, deficiency judgments on a car loan and a boat loan and high expenses for renting a home so that his children would have a suitable place to come for visitation. Appellant also contends that he presented evidence that his income was $24,000.00 in 1991 when child support was first calculated, but decreased to $13,000.00 in 1995. Appellant further argues that he presented evidence that he could not afford any employees, he went without heat to save money, he worked seven days a week, his income was very sporadic and that he took on odd jobs to make money in any way possible.
Appellant's assignment of error is based on his premise that the trial court's finding of contempt was against the manifest weight of the evidence. This premise, however, implicates the incorrect standard of appellate review. An appellate court will not overturn a trial court's finding of contempt absent an abuse of discretion. State ex rel. Ventronev. Birkel (1981), 65 Ohio St.2d 10, 11. An abuse of discretion connotes more than an error of law or judgment; it implies an attitude that is, "unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. A reviewing court cannot freely substitute its judgment for that of the trial court when applying the abuse of discretion standard. Watson v. Wolsonovich (1996), 112 Ohio App.3d 565,569.
R.C. § 2705.05 provides:
 "In all contempt proceedings, the court shall conduct a hearing. At the hearing, the court shall investigate the charge and hear any answer or testimony that the accused makes or offers and shall determine whether the accused is guilty of the contempt charge. If the accused is found guilty, the court may impose any of the following penalties:
 "(1) For a first offense, a fine of not more than two hundred fifty dollars, a definite term of imprisonment of not more than thirty days in jail, or both;
 "(2) For a second offense, a fine of not more than five hundred dollars, a definite term of imprisonment of not more than sixty days in jail, or both;
 "(3) For a third or subsequent offense, a fine of not more than one thousand dollars, a definite term of imprisonment of not more than ninety days in jail, or both."
"It is well established in the law of Ohio * * * that a person charged with contempt for the violation of a court order may defend by proving that it was not in his power to obey the order." Courtney v. Courtney (1984), 16 Ohio App.3d 329, 334. Once a person seeking contempt has demonstrated a defendant's failure to pay child support, the burden of proof shifts to the defendant to prove his or her inability to pay. Rhinehart v.Rhinehart (1993), 87 Ohio App.3d 325, 328.
In Anderson v. Anderson (December 1, 1998), Columbiana App. No. 96-CO-21, unreported, we upheld a contempt conviction where the contemnor presented a defense of inability to pay similar to the argument made in the case at bar. In Anderson, the contemnor admitted he was able to work, that he quit a job because he thought the wages were too low but then took an even lower paying job and that he had money to pay for extra gifts for his children even though he had regularly failed to pay child support. The defendant in Anderson also failed to request any reduction in child support. We held that these facts provided no evidence of inability to pay because any financial hardship was caused by factors within the contemnor's control.Id., 4, citing Rhinehart v. Rhinehart, supra, 328 and Courtneyv. Courtney, supra, 334.
In the present appeal, Appellant does not challenge that he failed to make the court ordered payments. Instead he focuses on raising as his defense his inability to pay. Appellant acknowledges that he has the burden of proving his inability to pay, yet he admits that he took no steps to reduce his support obligation, casting blame on his counsel during earlier proceedings. (Tr. 23-24.) Appellant testified that he had high blood pressure and possibly other health problems, (Tr. 26) however, he did not relate his health problems to his purported inability to pay support. Appellant's testimony does demonstrate that he was able to work and that he took on extra work when available, the profits from which he used to make some monthly support payments. (Tr. 34.) Appellant's testimony in general reveals that he continued to operate a business that was clearly unprofitable and which had been unprofitable for a number of years. Finally, Appellant revealed that he was able to come up with money to pay for a boat and for extras for his children, such as trips to camp and to Washington, D.C. or buying a saxophone, even though he was not making his full child support payments. (Tr. 39.) All of these factors were in Appellant's ability to control and therefore are not evidence in support of his defense of inability to pay.
We also note, with respect to his tax debt, that although Appellant established the existence of the debt, he did not testify as to its impact on his support obligation. There is no evidence of any plan to repay the debt or of how the lien effects his ability to pay his monthly support obligation. Regardless, his tax debt was also something within his control, as Appellant owned his own business and thereby undertook the responsibility to pay taxes accordingly.
While it is obvious to us that Appellant placed himself in the position to be in arrears, we also note that the record reflects that the trial judge carefully examined Appellant's arguments but found that it was Appellant's own poor decision making, such keeping a boat until he defaulted on the loan, which created his inability to pay the full child support payments. (Tr. 51.)
Appellant next argues that he was making partial child support payments and that, under Winkler v. Winkler (1991),81 Ohio App.3d 199, this should have been construed as a good faith effort excusing his non-compliance. Appellant erroneously equates partial payments with good faith. Appellant's payments were sporadic and coincided with court filings, apparently in an effort to allay contempt proceedings against him. Only when an obligor pays his obligation to the full extent of his capability and/or with some consistency will there be deemed to be a good faith effort to meet his obligation.
Given Appellant's opportunity to present a defense to his failure to pay his obligation and the trial court's careful consideration of his arguments and testimony, we cannot find that the trial court abused its discretion in finding him in contempt of court. Accordingly, we find that Appellant's second assignment of error lacks merit.
In his first assignment of error, Appellant argues that the trial court erred by not providing a means to purge his contempt when ordering his confinement.
We begin by restating that an appellate court will not reverse a contempt order absent an abuse of discretion and that to do so we must find that the trial court's actions were unreasonable, arbitrary or unconscionable. State ex rel.Ventrone v. Birkel, supra, 11; Blakemore v. Blakemore, supra,
219.
Contempt proceedings can be described as primarily either civil or criminal, although the proceedings themselves are suigeneris. Brown v. Executive 200 (1980), 64 Ohio St.2d 250, 253. Civil and criminal contempt proceedings can be distinguished by the purpose and character of the punishment meted out. Carrollv. Detty (1996), 113 Ohio App.3d 708, 711. In civil contempt, the purpose of the punishment is to coerce the contemnor to obey a judicial order for the benefit of a third party. Id. In civil contempt, the, "contemnor is said to carry the keys of his prison in his own pocket [citation omitted] * * * since he will be freed if he agrees to do as ordered." Pugh v. Pugh (1984),15 Ohio St.3d 136, 139, quoting Brown v. Executive 200, Inc.,
253. Because civil contempt sanctions are only conditional sanctions, a civil contempt conviction must provide a means for the contemnor to purge his contempt. State v. Kilbane (1980),61 Ohio St.2d 201, 206-207; Carroll v. Detty, 712. To find civil contempt, a trial court needs only to do so by clear and convincing evidence. Carroll v. Detty, 711.
On the other hand, criminal contempt sentences, "* * * are punitive in nature and are designed to vindicate the authority of the court [citations omitted]." State v. Kilbane, 205. Criminal contempt sentences are also, "* * * usually characterized by an unconditional prison sentence." Brown v.Executive 200, Inc., 254. A trial court must find proof of criminal contempt beyond a reasonable doubt. Schader v. Huff
(1983), 8 Ohio App.3d 111, 112.
In the present case, the record reveals that the trial court imposed a sentence for civil contempt. Failure to pay child support usually involves a finding of civil contempt.Carroll v. Detty, 712. Moreover, contempt in the context of a hearing pursuant to R.C. § 2705.05 is essentially civil in nature. Brown v. Enterprise 200, Inc., 253. In addition, the trial court stated, "* * * [Appellant] must understand that a Court order must be followed." (Tr. 52.) Thus, the court's obvious intention was to coerce compliance with its orders.Carroll v. Detty, 711.
Conspicuously lacking from the judgment entry ultimately sentencing Appellant in contempt is a means for Appellant to purge his contempt by paying his arrearage. Based on the circumstances, we find the court's omission in this regard to be an abuse of discretion. The law clearly states that a contempt order must provide a means to purge the contempt. State v.Kilbane, supra, 206-207; Carroll v. Detty, supra, 712. An abuse of discretion, however, must be based on something more than an error of law. Blakemore v. Blakemore, supra, 219. Given the rationale that civil contempt convictions serve to compel compliance with a court order, it is unreasonable to impose confinement without a means by which the contemnor can avoid his restraint. In other words, the interest of the court to have its orders followed for the benefit of the support obligee is not served by the contemnor's confinement. The contemnor cannot comply with his support obligation while confined. Nor will he be motivated to comply after serving his sentence, as the threat of incarceration has passed. While the record reflects that Appellant was given several "chances" to become and remain compliant with the earlier orders, the ultimate ruling did not allow for the opportunity to "make whole" and completely purge himself of contempt. Lack of an opportunity to purge at the earliest stage perpetuates litigation and only delays the collection of support by an obligee. Although we recognize that in the present case, Appellant's record of support order compliance is dismal, he nonetheless must be afforded some opportunity to become current in his obligations when civil contempt is found and jail is ordered.
We therefore find that Appellant's first assignment of error has merit. We hereby remand this matter for the trial court to implement a suitable mechanism by which Appellant can purge his charge of contempt prior to the imposition of confinement pursuant to the trial court's judgment entry. Our order does not affect the trial court's finding that Appellant was in contempt, but merely obligates the trial court to allow for an opportunity to purge immediately prior or subsequent to the imposition of confinement as a sanction for that contempt consistent with law and this opinion.
Cox, P.J., Donofrio, J., concurs.
APPROVED:
 _______________________ CHERYL L. WAITE, JUDGE