JOURNAL ENTRY AND OPINION
Defendant-appellant Agostino James Monastra (appellant) appeals from the trial court's finding holding him in contempt for failure to comply with the divorce decree dissolving his marriage with plaintiff-appellee Joanne Whitman.
Appellant assigns the following errors for review:
 I. THE TRIAL COURT ERRED BY AFFIRMING THE MAGISTRATE'S DECISION GRANTING WHITMAN'S MOTION TO SHOW CAUSE AND BY FINDING MONASTRA IN CONTEMPT OF THE DIVORCE DECREE AS TO THE PAYMENT OF INSTALLMENTS UNDER THE PROPERTY SETTLEMENT PROVISIONS.
 II. THE TRIAL COURT ERRED BY NOT SUSTAINING APPELLANT'S OBJECTIONS CONCERNING THE MAGISTRATE'S REFUSAL TO PERMIT HIM TO INTRODUCE ALL OF HIS EVIDENCE AS TO HIS INABILITY TO COMPLY WITH THE TERMS OF THE DIVORCE DECREE.
 III. THE TRIAL COURT'S DECISION VIOLATES THE OHIO AND UNITED STATES CONSTITUTIONS.
 IV. THE TRIAL COURT ERRED BY ADOPTING THE DECISION OF THE MAGISTRATE AS TO AN AWARD OF ATTORNEY FEES.
 V. THE TRIAL COURT ERRED BY SETTING A PURGE WHICH WAS NOT SUPPORTED BY THE EVIDENCE AS TO APPELLANT'S ABILITY TO PAY.
Finding the appeal to lack merit, the judgment of the trial court is affirmed.
 I.
On August 1, 1989, appellant and Joanne Monastra Whitman divorced by agreed judgment entry. Pursuant to the parties' separation agreement, Whitman received one million fifty thousand dollars ($1,050,000) as a partial division of property. Appellant agreed to pay Whitman thirty-five thousand dollars ($35,000) on December 23, 1989. The annual payment increased to seventy thousand dollars ($70,000) in 1990, with the final payment due in 2002.
On March 4, 1997, Whitman filed a motion to show cause and for attorney fees. In the motion, Whitman asked that appellant be held in contempt for not complying with the property settlement. In 1993, appellant did not make the seventy thousand dollar ($70,000) payment as required under the parties' property settlement agreement. Appellant failed to make any payment toward the property settlement obligation in the subsequent years as well.
On August 15, September 24, and September 26, 1997, the matter came before a magistrate for hearing. Appellant testified that he is the president and sole shareholder of Wrisco Industries, Incorporated, a Sub-Chapter S Corporation. Wrisco Industries is an aluminum organic company. At the time of the divorce in 1989, appellant owned fifty per cent of Wrisco's stock. The corporation redeemed the stock of appellant's partner in 1992 by structuring an agreement in which the sale price of approximately three hundred eighty thousand dollars ($380,000) would be paid over a ten year period.
Shortly after appellant's divorce was finalized, Wrisco entered a period of financial difficulty due to a number of reasons. Massive losses resulted in Wrisco defaulting on a loan from its lender. From 1989 to 1992, the lender placed Wrisco in a forbearance agreement. Finally, Wrisco needed to find another financier. Wrisco reached an agreement with Congress Financial, which appellant described as a lender of last resort. Appellant personally guaranteed the loans made by Congress Financial. Wrisco has a five million dollar ($5,000,000) line of credit advanced by Congress Financial. Wrisco has borrowed approximately four million dollars ($4,000,000) against the line of credit. Congress Financial charges Wrisco a higher interest rate than did the previous financial institution. Appellant stated his ability to withdraw money from Wrisco is restricted by Congress Financial.
In 1987, appellant purchased a home in Palm Beach Gardens, Florida, for one hundred seventy thousand dollars ($170,000), where he now resides. Appellant transferred half his interest in the property to his current wife, Carolyn. Appellant estimated the house was now worth two hundred thousand dollars ($200,000) with a one hundred thousand dollar ($100,000) mortgage balance. Shortly after their 1989 marriage, appellant gifted Carolyn with approximately one hundred thousand dollars ($100,000) which she placed in a brokerage account. Carolyn sold stock in 1993, 1994, and 1995. Appellant did not ask Carolyn to use her money to pay any part of his debt to Whitman. Carolyn does not work because of health problems.
In 1993, appellant's adjusted gross income was one hundred eighty-eight thousand dollars ($188,000). Appellant earned one hundred fifty-three thousand dollars ($153,000) in wages that year. In 1994, appellant's adjusted gross income declined to one hundred eighty-three thousand dollars ($183,000) with one hundred seventy-three thousand dollars ($173,000) being wage income. In 1995, appellant's adjusted gross income was one hundred seventy thousand dollars ($170,000). He earned one hundred sixty-eight thousand dollars ($168,000) in wages that year. Appellant averred he had no income in those years with which to pay any part of his property settlement obligation. Income from a real estate partnership appellant is involved in was used to pay living expenses. That income amounted to about one thousand five hundred dollars ($1,500) a month. At the time of the hearing, appellant had not filed his personal income tax return or Wrisco's tax return for 1996. An audit of Wrisco for 1996, for which the corporation paid thirty-five thousand dollars ($35,000), was not produced at the hearing. Appellant admitted the corporate income for 1996 would be almost doubled from that of 1995.
Appellant claimed Wrisco was in such dire financial straights that he contemplated filing for bankruptcy in 1992. Wrisco experienced further financial difficulties when appellant pled guilty to an anti-trust violation in 1995. Although appellant was only fined fifty dollars ($50), Wrisco's fine, interest, and attorney's fees amounted to approximately one million dollars ($1,000,000). Wrisco borrowed money from Congress Financial to pay the fine which is on an extended note to the federal government.
Appellant acknowledged he did not pay anything toward his property settlement obligation in 1993, 1994, 1995, or 1996. He did not know if he would make any payment in 1997. Appellant stated he had not explored borrowing against any of his assets or trying to raise the money to satisfy the obligation in any other fashion.
On January 23, 1998, the magistrate issued its decision. The magistrate found appellant was in arrears of his property settlement by three hundred forty-three thousand two hundred forty-nine dollars ($343,249) as of September 26, 1997. The magistrate found appellant had the ability to comply with the property division payment and that appellant should be held in contempt. The magistrate found that Whitman should be awarded fifteen thousand dollars ($15,000) in attorney fees as a result of the action. The magistrate sentenced appellant to thirty (30) days in jail or to perform two hundred (200) hours of community service. Appellant could purge the sentence if he paid one hundred eighty thousand dollars ($180,000) to Whitman within thirty (30) days. Appellant was ordered to continue to pay seventy thousand dollars ($70,000) a year for the property settlement, continue to pay his spousal support, and pay an additional twelve thousand dollars ($12,000) per month on the arrearage.
On April 22, 1998, appellant filed objections to the magistrate's decision. On June 1, 1999, the trial court sustained appellant's objections in part, ordering that appellant's sentence would be purged if he paid sixty thousand dollars ($60,000) and pay an additional four thousand dollars ($4,000) per month for the arrearage until 2003. Then appellant would be required to pay a lump sum payment of seventy thousand dollars ($70,000) a year until the arrearage was paid in full. The trial court awarded Whitman fifteen thousand dollars ($15,000) in attorney fees.
 II.
In his first assignment of error, appellant contends the trial court abused its discretion by granting Whitman's show cause motion and finding him in contempt of court. Appellant maintains that he met his burden of proof by showing it was impossible for him to comply with the terms of the property settlement.
Contempt of court is the disobedience or disregard of a court order or a command of judicial authority. In re Parker (1995), 105 Ohio App.3d 31. Civil contempt occurs where the sanction is imposed to coerce the contemnor to comply with the court's order. Morford v. Morford (1993),85 Ohio App.3d 50. A court has both inherent and statutory authority to punish a party for failure to comply with a prior court order. Dozer v. Dozer (1993), 88 Ohio App.3d 296, 302. An appellate court will review a contempt finding under an abuse of discretion standard. Marden v. Marden (1996), 108 Ohio App.3d 568. An abuse of discretion connotes more than an error of law or judgment; it implies the trial court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, a reviewing court is not free to substitute its judgment for that of the trial court. Berk v. Matthews (1990), 53 Ohio St.3d 161,169. Although a reviewing court may not have made the same choice or determination as the trial court did, that judgment will stand in the absence of an abuse of discretion.
Appellant relies upon the well established law in Ohio that a person charged with contempt for the violation of a court order may defend by proving that it was not in his power to obey the order. Courtney v. Courtney (1984), 16 Ohio App.3d 329; In re Purola (1991),73 Ohio App.3d 306; Winkler v. Winkler (1991), 81 Ohio App.3d 199; Watson v. Wolsonovich (1996), 112 Ohio App.3d 565. The defendant bears the burden of proving he or she lacked the ability to comply with the court order. Rinehart v. Rinehart (1993), 87 Ohio App.3d 325.
It has been appellant's contention that circumstances beyond his control prevented him from making the property installment payments. Appellant submits he presented evidence below demonstrating his inability to pay the seventy thousand dollar ($70,000) payment since 1993. Appellant argues that the magistrate relied upon improper figures such as his gross income and corporate earnings to show his ability to meet his obligation. Appellant maintains that he provided ample evidence illustrating Wrisco experienced a financial catastrophe preventing him from paying the settlement.
Although appellant never mentions the point, the property settlement at issue cannot now be modified by the trial court, this court, or the parties. Appellant is obligated to Whitman for the entire one million fifty thousand dollars ($1,050,000) property settlement he agreed to in 1989. Appellant mentions he received little if any liquid assets in the divorce decree. However, the parties entered into a separation agreement which was incorporated into the divorce decree. Appellant had an opportunity to control the terms of the agreement and cannot now complain about the contents. See Knapp v. Knapp (1986), 24 Ohio St.3d 141, 146. Further, appellant never said one word about when he expects to, or should be required to, make any payment toward his property settlement obligation. Appellant seems to want carte blanche to decide when or if to pay or change the agreement.
Appellant asserts the magistrate relied upon improper financial figures and disregarded his unrebutted testimony showing his inability to pay the seventy thousand dollar ($70,000) annual payment since 1993. Appellant argues the magistrate confused his earnings with Wrisco's, attributed all instead of half of the partnership income to him, and considered gross instead of net income. Appellant argues these errors are so fundamental that the trial court abused its discretion when adopting the magistrate's decision.
The trial court did not abuse its discretion by adopting the magistrate's decision to use the figures reflecting appellant's gross rather than net income. Deductions and credits which are allowable for the purposes of calculating income tax are not necessarily applicable to a determination of a party's ability to pay a court ordered obligation.
The trial court also attributed Wrisco's income to appellant. Wrisco is a Subchapter S Corporation. A Subchapter S Corporation is a hybrid entity, having the limited liability of a corporation but enjoying the tax advantages of an unincorporated association such as a partnership. Tetlak v. Bratenahl (Dec. 30, 1999), Cuyahoga App. No. 74807, unreported. Such a corporation is considered a flow-through entity because the income and losses of the business are nontaxable to the corporation. Instead, the income and losses flow through to the individual shareholders. Dupee v. Tracy (1999), 85 Ohio St.3d 350. The profits generated by the Subchapter S Corporation are taxed as personal income to the shareholders. Ardire v. Tracy (1997), 77 Ohio St.3d 409. See also, Agley v. Tracy (1999), 87 Ohio St.3d 265. In Harter v. Harter (Feb. 26, 1998), Allen App. No. 1-97-55, unreported, the Third District Court of Appeals upheld the trial court's order attributing the total income from a Subchapter S Corporation to the sole shareholder. Therefore, Wrisco's earnings passed through to appellant as personal income. The trial court did not abuse its discretion by finding the income was available for appellant's use.
Appellant also argues that the agreement with Congress Financial prevented him from withdrawing funds from Wrisco for non-business expenses. Appellant admitted he never inquired of Congress Financial whether such a loan would be permitted. Congress Financial loaned appellant the money to pay the price-fixing fine. Wrisco incurred this fine because of appellant's personal wrong-doings. Appellant's accountant testified that Wrisco would not be given a loan yet could not explain how the company obtained a five million dollar ($5,000,000) line of credit, of which approximately one million dollars ($1,000,000) remained available at the time of the hearing. Because appellant made no effort or inquiry about borrowing from any source to even partially satisfy his obligation, the trial court did not abuse its discretion by apparently discounting this testimony.
The magistrate also included the entire income from appellant's partnership. Appellant's records show he received half of the income from the partnership. For 1993 and 1994, the compensation of the corporate officers was attributed to appellant as income. Both of these determinations were erroneous. Appellant clearly did not receive all of the partnership's income and there is no showing the compensation of the officers was not a legitimate business expense. However, even if appellant's income is adjusted for the years in question, there was sufficient income to pay his obligation to Whitman.
Appellant's first assignment of error is overruled.
 III.
In his second assignment of error, appellant asserts the trial court erred by upholding the ruling of the magistrate refusing to admit into evidence documents showing his financial condition prior to 1993. The trial court overruled appellant's objection on the matter. Appellant argues this evidence was necessary for him to show the full magnitude of the financial difficulties experienced by Wrisco.
The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Robb (2000), 88 Ohio St.3d 59. A reviewing court will not interfere with a trial court's decision unless it clearly abused its discretion and the complaining party has been materially prejudiced. State v. Alfieri (1998), 132 Ohio App.3d 69.
Appellant testified extensively regarding the financial problems Wrisco and he experienced from 1989 to 1992. The trial court was well aware of appellant's contention that financial reverses beyond his control during those years ultimately caused him to stop paying the annual property settlement payments in 1993 and thereafter. Appellant failed to demonstrate he suffered prejudice by the trial court's decision.
Appellant's second assignment of error is not well-taken.
 IV.
Appellant's third assignment of error challenges the constitutionality of the trial court's decision. Appellant states that the imposition of a prison term for the failure to pay a property settlement violates both the Ohio and United States Constitutions prohibition against the right not to be imprisoned for a debt. Therefore, appellant argues that contempt proceedings cannot be utilized for failing to comply with a property division. In Oatey v. Oatey (Feb. 6, 1997), Cuyahoga App. No. 70630, unreported, this court held to the contrary, stating that contempt proceedings may be used to enforce a property settlement provision. See also Burkes v. Burkes (Mar. 23, 2000), Cuyahoga App. No. 75518, unreported.
Appellant's third assignment of error is not well-taken.
 V.
In his fourth assignment of error, appellant asserts the trial court abused its discretion by upholding the magistrate's decision awarding Whitman fifteen thousand dollars ($15,000) in attorney fees. Appellant maintains that, because he should not have been held in contempt, the award was erroneous. Also, appellant argues the award is not supported by the record showing he has the ability to pay the award.
In a civil contempt action, a trial court may award attorney fees as compensation for losses which occurred as a direct result of the contempt. Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250, 254; RLM Industries, Inc. v. Indep. Holding Co. (1992), 83 Ohio App.3d 373,377. It is well established that a trial court's decision to award attorney fees will not be disturbed on appeal absent a clear abuse of discretion. Goode v. Goode (1991), 70 Ohio App.3d 125, 134.
There is nothing in the record before this court showing the trial court abused its discretion by finding appellant in contempt for not complying with an order of the court. Although appellant contends the trial court did not comply with Loc.R 21 because evidence of the parties' respective income and expenses were not disclosed at the hearing, the record reveals otherwise. Virtually the entire record consists of evidence regarding appellant's financial circumstances. Further, Whitman's attorney testified Whitman's only income consists of the spousal support appellant pays her each month. This is adequate to comply with Loc.R. 21.
Appellant's fourth assignment of error is overruled.
 VI.
In his fifth assignment of error, appellant claims the trial court erred by imposing a purge which is beyond his ability to pay. Appellant argues that the purge requirement that he pay sixty thousand dollars ($60,000) in thirty days is unrealistic given the evidence he submitted at trial showing his reduced financial circumstances which make it impossible for him to comply. Appellant also maintains he cannot pay an additional four thousand dollars ($4,000) per month to pay the arrearage.
A trial court may employ sanctions to coerce a contemnor into complying with a court order. A reviewing court utilizes an abuse of discretion standard in reviewing the sanctions. Burchett v. Miller (1997),123 Ohio App.3d 550. Any sanction for civil contempt must allow the contemnor an opportunity to purge the contempt. Carroll v. Detty (1996),113 Ohio App.3d 708, 712. A trial court abuses its discretion by ordering purge conditions which are unreasonable or where compliance is impossible. Burchett, supra.
Appellant's stance is that he cannot pay the purge amount based upon his finances. Appellant argues there was no evidence he could borrow the money or sell any assets in order to comply with the purge conditions. Appellant states his salary has not increased in years and that his wife holds a half-interest in their home.
The evidence relating to 1996 was not provided to the trial court. Appellant's personal income tax return and the tax return for Wrisco had not been completed at the time of the hearing. Appellant inexplicably saw no reason to produce an audit for 1996 showing Wrisco's financial condition. However, there is at least some indication in the record that Wrisco's circumstances were improving and may have continued to do so in the nearly three years since the 1997 hearings. Appellant chose not to provide the trial court with current information regarding his ability to pay. There was evidence supporting the trial court's finding appellant could afford to purge his contempt of court. The trial court did not abuse its discretion by imposing the purge conditions.
Appellant's fifth assignment of error is overruled.
It is ordered that appellee recover of appellant her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court, Domestic Relations Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ___________________________________ LEO M. SPELLACY, PRESIDING JUDGE
PATRICIA A. BLACKMON, J. and ANNE L. KILBANE, J. CONCUR.