On January 14, 1985, appellee, Monica Lou Wells, filed a complaint against appellant, James F. Kadri, to establish paternity and to provide child support to Derek Thomas Wells born September 19, 1983. This case was given Case No. 25416. By judgment entry filed February 14, 1986, the trial court ordered appellant to pay $125.00 per month for child support.
On November 1, 1988, appellee, Lori Lynn Garbrandt, nka Kadri, filed a complaint against appellant to establish paternity and to provide child support to Brittney Diane Garbrandt born February 20, 1988. This case was given Case No. 88P0183. By judgment entry filed July 25, 1996, the trial court approved and adopted the magistrate's decision recommending $192.00 per month for child support.[1]
On December 21, 1995, the Tuscarawas County Child Support Enforcement Agency (hereinafter "CSEA") filed a motion for contempt for appellant's failure to pay on his child support obligation in Case No. 25416. By decision filed July 22, 1996, the magistrate found appellant in contempt and sentenced appellant to thirty days in jail, suspended on the condition appellant purge the contempt. The trial court approved and adopted this decision in a judgment entry filed August 7, 1996.
On December 4, 1996, CSEA filed a motion to impose jail sentence for appellant's failure to purge the contempt in Case No. 25416. On same date, CSEA filed a motion for contempt for appellant's failure to pay on his child support obligation in Case No. 88P0183. Hearings were held on February 21, 1997 and August 22, 1997. By decisions filed September 11, 1997, the magistrate found appellant failed to purge the contempt in Case No. 25416 and ordered appellant to serve fifteen days of the suspended sentence, and found appellant in contempt in Case No. 88P0183 and sentenced appellant to thirty days in jail, suspended on the condition appellant purge the contempt. The trial court approved and adopted these decisions in judgment entries filed September 29, 1997.
Additional hearings were held on February 13, 1998, June 29, 1998 and July 13, 1998. By decisions filed July 22, 1998, the magistrate found appellant failed to comply with the terms of the purge order and sentenced appellant to ten days in jail in each case, to be served concurrently. The trial court approved and adopted these decisions in judgment entries filed July 27, 1998.
On July 29, 1998, appellant filed objections to the magistrate's decisions. A hearing was held on December 7, 1998. By judgment entries filed December 10, 1998, the trial court denied appellant's objections and approved and adopted the magistrate's decisions with the exception of imposing appellant's ten day jail sentences consecutively.
Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
I
 THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING A JAIL SENTENCE FOR CONTEMPT WHEN MR. KADRI HAD DEMONSTRATED THE IMPOSSIBILITY OF HIS FULL COMPLIANCE WITH THE COURT'S PURGE TERMS.
 I
Appellant claims the trial court erred in imposing a jail sentence for contempt when he had proven his inability to comply with the conditions of the purge order. Specifically, appellant claims he proved his inability to make the minimal threshold payment of $50.00 per month per child. We disagree.
In Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250,253-254, the Supreme Court of Ohio discussed the distinction between civil and criminal contempt as follows:
 While both types of contempt contain an element of punishment, courts distinguish criminal and civil contempt not on the basis of punishment, but rather, by the character and purpose of the punishment. * * * Punishment is remedial or coercive and for the benefit of the complainant in civil contempt. Prison sentences are conditional. The contemnor is said to carry the keys of his prison in his own pocket * * * since he will be freed if he agrees to do as ordered. Criminal contempt, on the other hand, is usually characterized by an unconditional prison sentence. Such imprisonment operates not as a remedy coercive in its nature but as punishment for the completed act of disobedience, and to vindicate the authority of the law and the court. * * * Therefore, to determine if the sanctions in the instant cause were criminal or civil in nature, it is necessary to determine the purpose behind each sanction: was it to coerce the appellees to obey the consent judgment decree, or was it to punish them for past violations? (Citations omitted.)
In the case sub judice, the trial court found appellant in civil contempt because although it sentenced appellant to jail time, it provided a purge mechanism i.e., suspension of the jail time on the condition appellant pay a minimum monthly amount on his child support obligation. To make a finding of civil contempt, the evidence must be clear and convincing.Brown at 253. This court will not reverse a finding of civil contempt absent a showing of an abuse of discretion. State exrel, Ventrone v. Birkel (1981), 65 Ohio St.2d 10. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217. We concur with appellant's argument that an individual charged with contempt may defend the charge by establishing it is not within his/her power to obey the court order. "However, the person who seeks to establish the defense of impossibility bears the burden of satisfying the court that his failure to obey was due to his inability to render obedience." In re Purola (1991), 73 Ohio App.3d 306,313-314, citing Courtney v. Courtney (1984),16 Ohio App.3d 329.
By decisions filed September 11, 1997 in both cases, the trial court ordered the following purge conditions:
 The Defendant shall seek work at not less than thirty (30) places per month, effective September 1, 1997, and continuing thereafter, and shall report the same, in writing, to the Child Support Enforcement Agency on or before the last day of each month. Upon becoming employed, the Defendant shall immediately notify the Child Support Enforcement Agency, in writing, and a wage withholding shall go on to secure payment of the current support obligation, current poundage, and arrearages as previously ordered herein.
 During the remaining purge period, the Defendant shall also make a threshold obligation of not less than $50.00 per month toward his support obligation, effective September 1, 1997, and continuing thereafter, payable through the Tuscarawas County Child Enforcement Agency. The payment of said threshold obligation does not relieve Defendant of the balance of his support obligation previously ordered herein * * *.
We note appellant technically complied with the "seek work order" which required appellant to provide written proof to CSEA of his search for employment.[2] By Findings of Fact and Conclusions of Law Nos. 8 and 9 filed July 22, 1998 in both cases, the trial court found the following:
 8. Although Defendant appears to have been looking for work, Defendant was unable to obtain employment until a matter of a week or so prior to the hearing where this Court would be determining whether or not to impose any of the suspended jail sentence.
 9. For Defendant to properly purge the previous finding of contempt, he was to not only seek work at not less than thirty (30) places per month, each and every month, but he was to make threshold payments of at least $50.00 per month towards his child support obligation. Although Defendant may have in fact been seeking work, he failed to make any payments upon his child support obligation as ordered.
Appellant argues he had consistently sought employment but because of his recent incarceration, work was not readily available. When appellant was working, his wages were assigned to CSEA. Appellant lost his employment because he had no transportation or the ability to pay for transportation; in short, Officer Kienski's argument in West Side Story "I am depraved because I am deprived."
CSEA argues appellant has somehow managed to survive with no disposable income since September of 1997, yet he managed to get work forms signed from all over Tuscarawas County. At the June 29, 1998 hearing, appellant testified as follows:
 I don't have no income. I'm not going to go out there and commit no felonies to pay them $50.00 a month for each woman. I can't do that. I'm not going back to prison to pay them $50.00 I don't have. I don't have no income at all. I can't even get food stamps. I owe her mom so much money; $75.00 a week since I've been out of work. I've went everywhere looking for work. This don't stem what I owe them for, this is nine (9) years I was in prison.
* * *
 I've sent you a work form every month. I can't give you $50.00 for each person, I don't have it. I don't have no income at all. I quit smoking cigarettes a year ago in March. I don't smoke nothing no more because I can't afford to buy a pack of cigarettes. I can't afford to buy a pack of cigarettes. I don't even own a car. I didn't even have a place to live since March 1996 of my own. I wanted room I could call my own. If you want to take me down to County, take me down to County, but at least I got a cell there of my own. I can't give you anymore than I'm already doing, Bud. I'm doing the best I can.
T. at 17 and 18, respectively.
At the time of this hearing, appellant was employed for the two weeks prior to the hearing at Rose Run Drilling earning $9.00 an hour, working a forty hour week. T. at 21-22. At the hearing, appellant had his paycheck stub in his wallet. T. at 29. Appellant testified he has a Bachelor's Degree in Business and has an I.Q. of 163. T. at 24.
At the December 7, 1998 objections hearing, appellant reiterated his employment fate and concluded his testimony by stating "[b]ut if you feel that I've done any contempt or I haven't done 100% positively for my child every month, then give me forty-five (45) days. I'll do it. Hey, I did nine (9) years for no reason. If you want the taxpayers to pay me for sitting down there for doing 100% I tried to do? Hey, after this job, I ain't looking no more, I'm tired of it." T. at 9.
After conducting five purge hearings, from February 1997 to December 1998, the trial court has essentially given up on appellant's voluntary compliance with the minimum $50.00 per month per child order. One might argue "you can't get blood out of a turnip" or "water from a stone" however, it is clear appellant is able to get transportation all over Tuscarawas County. In addition, appellant threatened the trial court that he would never work again. Appellant also admitted he generally seeks employment under his job qualifications, yet refuses minimum wage jobs.
We note appellant was only required to pay a total of $100.00 per month. It appears appellant lived rent free at Ms. Devault's mother's home, enjoyed transportation by Ms. Devault and did nothing about retaining active employment until two weeks before the June 26, 1998 and December 7, 1998 hearings.
It is appellant's burden to satisfy the trial court that he is unable to pay his child support obligation. Given the circumstances sub judice, we find appellant has failed to meet that burden. The trial court did not err in imposing a jail sentence for contempt.
The sole assignment of error is denied.
The judgment of the Court of Common Pleas of Tuscarawas County, Ohio, Juvenile Division is hereby affirmed.
By Farmer, J., Wise, P.J. and Hoffman, J. concur.
---------------------------
---------------------------
 --------------------------- JUDGES
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio, Juvenile Division is affirmed.
---------------------------
---------------------------
 --------------------------- JUDGES
[1] The length of time from complaint to disposition was due to appellant's incarceration in the Marion Correctional Institution.
[2] At the July 13, 1998 hearing, CSEA admitted it received a partial work form for the month of January, and work forms for the months of March, April and May. No form was provided for February., T. at 2.