OPINION
Petitioner-appellant Richard K. Shroyer [hereinafter appellant] appeals the April 30, 2001, Judgment Entry of the Coshocton County Court of Common Pleas which denied appellant's Motion to Terminate and/or Reduce Spousal Support, found appellant to be in contempt of a prior order of the trial court and denied appellant's Motion for a New Trial. Petitioner-appellee is Karen I. Shroyer [hereinafter appellee].
 STATEMENT OF THE FACTS AND CASE
A marriage between the parties was terminated by a Decree of Divorce, filed May 28, 1999. The Decree ordered appellant to pay appellee spousal support as follows:
 together with 2% administrative charge therein, the sum of $600.00 per month, commencing May 30, 1999, and continuing for a period of 95 additional months thereafter. This obligation shall terminate upon the death of either party or if Wife [appellee] remarries or cohabits with an unrelated person of the opposite sex.
 To allow for potential change of circumstances, on the part of either party, the Court specifically retains authority to modify the amount and terms of spousal support pursuant to R.C. 3105.18(E).
The trial court further found that appellant's projected gross income for 1999 would be $25,400.00. As to appellee, the trial court found that her anticipated income for future gross earnings was $15,850.00 per year.
On June 26, 2000, appellee filed a Motion for Contempt for nonpayment of spousal support. On July 31, 2000, appellant responded by filing a Motion to Terminate and/or Reduce Spousal Support.
On September 28, 2000, the motions of the parties came on for hearing before a Magistrate. At the conclusion of the hearing, the Magistrate ordered appellee to submit an affidavit regarding attorney fees incurred as a result of appellee's Motion for Contempt.
In a Magistrate's Decision filed December 8, 2000, the Magistrate recommended that appellant be found in contempt and that appellee be awarded attorney fees. Further, the Magistrate recommended that appellant's Motion to Terminate and/or Reduce Spousal Support should be denied.
Subsequently, appellant requested written findings of fact and conclusions of law. After both parties had submitted proposed findings of fact and conclusions of law, the Magistrate filed an Amended Magistrate's Decision.[1]
On April 2, 2001, appellant filed Objections to the Magistrate's Decision and a Request for a New Hearing or the opportunity to present additional evidence regarding appellant's loss of employment.
On April 30, 2001, the trial court filed a Judgment Entry which adopted the Magistrate's Decision and Amended Magistrate's Decision, overruled appellant's Objections and set forth show cause dates in regard to the finding of contempt. The Judgment Entry also denied appellant's Request for a New Hearing.
It is from the April 30, 2001, Judgment Entry that appellant appeals, raising the following assignments of error:
ASSIGNMENT OF ERROR I
 THE TRIAL COURT'S DECISION NOT TO MODIFY AND/OR TERMINATE THE APPELLANT'S SPOUSAL SUPPORT OBLIGATION WAS CONTRARY TO LAW, CONSTITUTED AN ABUSE OF DISCRETION BY THE TRIAL COURT AND IS NOT SUPPORTED BY AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 ASSIGNMENT OF ERROR II
 THE TRIAL COURT'S DECISION TO FIND THE APPELLANT IN CONTEMPT OF COURT WAS CONTRARY TO LAW, CONSTITUTED AN ABUSE OF DISCRETION BY THE TRIAL COURT AND IS NOT SUPPORTED BY AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
ASSIGNMENT OF ERROR III
 THE TRIAL COURT'S ADMISSION AND CONSIDERATION OF EVIDENCE WHICH OCCURRED AFTER THE FILING OF THE CONTEMPT MOTION WAS AN ABUSE OF DISCRETION BY THE TRIAL COURT.
 ASSIGNMENT OF ERROR IV
 THE TRIAL COURT'S DECISION TO ORDER THE APPELLANT TO PAY APPELLEE AS AND FOR HER ATTORNEY FEES THE AMOUNT OF $762.00 AS A PURGE CONDITION OF THE CONTEMPT WAS CONTRARY TO LAW, CONSTITUTED AN ABUSE OF DISCRETION BY THE TRIAL COURT AND IS NOT SUPPORTED BY AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 ASSIGNMENT OF ERROR V
 THE TRIAL COURT'S DECISION TO FIND THAT THE APPELLANT SHOULD PAY TO APPELLEE AS AND FOR HER ATTORNEY FEES THE AMOUNT OF $762.00 AS A PURGE CONDITION OF THE CONTEMPT MOTION VIOLATED THE OHIO RULES OF EVIDENCE AND WAS A VIOLATION OF THE APPELLANT'S CONSTITUTIONAL RIGHTS TO CONFRONT WITNESSES AGAINST HIMSELF.
 ASSIGNMENT OF ERROR VI
 THE TRIAL COURT'S DECISION NOT TO GRANT TO THE APPELLANT A NEW HEARING CONSTITUTED AN ABUSE OF DISCRETION BY THE TRIAL COURT.
Any other facts relative to our discussion of the assignments of error shall be contained therein.
 I
In the first assignment of error, appellant contends that the trial court's decision not to modify or terminate appellant's spousal support obligation was contrary to law, an abuse of discretion and not supported by the evidence. Further, appellant alleges that the decision was against the manifest weight of the evidence.
Decisions regarding the modification of spousal support are reviewable under an abuse of discretion standard. Booth v. Booth (1989),44 Ohio St.3d 142. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140.
In order for the trial court to modify the amount or terms of the alimony or spousal support, the court must determine that the divorce decree contained a provision specifically authorizing the court to modify the amount or terms of alimony or spousal support and the circumstances of either party have changed. Carnahan v. Carnahan (1997),118 Ohio App.3d 393, 398; Moore v. Moore (1997), 120 Ohio App.3d 488,491; R.C. 3105.18(E). "[A] change in the circumstances of a party includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses." R.C. 3105.18(F). The change of circumstances that is required must be material, not purposely brought about by the moving party and not contemplated at the time the parties entered into the prior agreement or order. Roberson v. Roberson (Nov. 29, 1993), Licking App. No. 93-CA-42, unreported. The burden of showing that a reduction of spousal support is appropriate is on the party who seeks the reduction. Haniger v. Haniger
(1982), 8 Ohio App.3d 286.
In considering appellant's Motion, the trial court considered each of the factors delineated in R.C. 3105.18(C)(1).[2] The issue, as framed by the trial court, was whether appellant had voluntarily reduced his income. See R.C. 3105.18(C)(1)(a) and (b). The trial court made the following pertinent findings:
 (7)(A) The Court must consider the income of the parties from all sources including, but not limited to, income derived from property divided, disbursed or distributed by this order. (Ohio Revised Code Section 3105.18). This Court finds no change of circumstances since the initial decree.
 (B) Defendant had earnings from employment in 1999 of $15,267.75 from Warren Lapp Sons until he was terminated. Defendant then received unemployment compensation of $7,077.00 paid at the rate of $337.00 per week commencing in August 1999. Defendant held at the time of his termination and currently holds a valid Commercial Driver's License, and he has driven semi-trucks for years. There were, at the time of his termination and currently are available in the Coshocton County, Ohio, area truck driving positions with Coshocton Trucking, Inc. for which Defendant would be qualified, paying $.32 per mile, and $30,000.00 to $40,000.00 per year. Defendant did not attempt to secure such a driving position following his termination. In fact, Husband appeared offended during the Magistrate's hearing when he was even questioned as to his attempts to secure an "over the road" truck driving job. (Transcript, Pg. 31-33.) Defendant obtained new employment as a truck driver in May of 2000 and had earnings of $4,886.01 as of July 14, 2000 including approximately $1,500.00 to $1,800.00 in May and June, 2000. Defendant also continued to receive unemployment compensation benefits in 2000 in the amount of $337.00 per week through April 2000. The Magistrate finds that in the calendar year 1999, Plaintiff earned the sum of $16,289.17. The Magistrate further finds that in the calendar year 2000 through the time of the Magistrate's hearing, Plaintiff earned the sum of $13,551.79.
. . .
 (10) Defendant continues to live at the same residence and with the same girlfriend as he had at the time of the divorce. Defendant also has the same opportunities for employment and earnings as he had at the time of the divorce. . . .
The trial court found no change of circumstances had occurred to appellant's earning ability:[3]
Conclusion of Law
. . .
 (7) The Magistrate finds that Husband's reduction of income is voluntary and that Husband is capable of earning income in accordance with his income at the time of the divorce.
 (8) Therefore, Husband's motion to reduce/terminate his spousal support obligation is not well-taken and is DENIED.
The trial court found no change of circumstances. As previously stated, a change of circumstances includes any involuntary decrease in a parties income. See R.C. 3105.18(f). Appellant argues that the trial court should have modified or terminated his spousal support because his income was reduced when he lost his job through no fault of his own and he could not find similar work that paid as much as he was making at the time of the divorce. Appellant contends that the trial court abused its discretion when it found the decrease in appellant's income voluntary. We disagree.
There is no disagreement that appellant's income was reduced or that appellant lost his previous job involuntarily.[4] However, the trial court found that the reduction in income was voluntary because there were over the road truck driving positions open while appellant was looking for work. The trial court found these positions paid $30,000.00 to $40,000.00 per year. The trial court further found that appellant would qualify for such a position.
First, appellant argues that the trial court's findings were not supported by the evidence adduced at the hearing. Appellant contends that the evidence showed that the driving positions in question paid at most $39,000.00, less 25% to 30% for expenses incurred. Therefore, appellant argues that the testimony showed the positions paid $27,300.00 to $29,250.00. Appellant asserts that such income would call for a modification, in and of itself.
However, accepting appellant's figures, such incomes would be comparable to the income projected by the trial court at the time of the divorce. In the Judgment Entry determining spousal support, the trial court anticipated a decrease in appellant's income and projected a 1999 income of $25,400.00. Even using the figures as asserted by appellant, the evidence supports a finding that the over the road driving positions would pay near or above the income level projected by the trial court at the time of divorce and establishment of spousal support.
Next, appellant contends he is not qualified for the over the road driver positions at Coschocton Trucking. Appellant cites to the testimony of Roxanne Hardrosky, Safety Director at Coshocton Trucking, Inc. Appellant asserts that Hardrosky's testimony demonstrates that "Appellant most likely would not qualify for the position because of his speeding tickets on his driving record." Appellant's Merit Brief at page 11 (citing the transcript of the hearing held September 28, 2000, at 47 and 49). Hardrosky testified as follows:
By Mr. Blanchard:
Q. Okay. Do you know Mr. Shroyer?
A. Yes.
 Q. Is there any reason why, that you know of, that Mr. Shroyer would not qualify for one of these jobs with your company?
 A. Well, I wouldn't — I don't qualify him. Our insurance company qualifies him. And I wouldn't know what his M.V.R. looks like, because that's the very first thing we do is run an M.V.R.
Q. Okay.
 A. They have to have a clean M.V.R., which means their speeding tickets, any violations they have. We're actually governed through the insurance companies, because if they can't insure them, they won't let us hire them.
 Q. Okay. What if the individual applying for the job had had no speeding tickets since September of 1998, to your knowledge, would that person qualify, if you know?
A. I would say yes. . . .
By Mr. Skelton:
 Q. Ms. Hadrosky, if a person has, say, seven points on their license from speeding cases in 1998, would that cause a problem for your insurance company?
 A. I would say it would if they have points on there, yes. They do look at the points. If there is 12 points, then you're done, as far as your license go for — I don't know how — what length of time they take them away. Buy they — I know they review back at least a three-year period.
. . .
 Q. And do — to your knowledge has your insurance company ever refused to accept someone who had seven points on their license from speeding tickets?
A. Oh, yes, um-huh.
Tr. 47-49.
Appellant testified that he had 7 points on his license, from three speeding tickets in 1998. From the questions asked by counsel and the answers given by Hardrosky, it is difficult to get a firm answer as to whether appellant's driving record would disqualify appellant from over the road driving positions. Ms. Hadrosky admits in her testimony that the points would cause a problem for the insurance company, but did not testify definitively that the points would disqualify the appellant from being insured. Portions of the testimony reflect that he is qualified while other portions appear to imply appellant is not qualified. However, testimony by appellant himself confirms to this court that the trial court did not abuse its discretion. In testifying, appellant was asked if there was a reason he could not drive over the road:
By Mr. Blanchard:
Q. Could you not find a job?
A. Nope.
Q. Where did you look?
A. Oh, any place that drove truck, really. . . .
 Q. All right. Would you — do you have any specific places that you went and looked for a job, Mr. Shroyer?
 A. I went to a lot of construction places, but they all said the same thing. They wasn't hiring yet. And it wouldn't be till April till like they started. And, let's see, I went a lot of places headed up in that direction because I didn't want to come clear back down this way and look anymore. And I didn't want to go over the road.
. . .
Q. Do you have a CDL that —
A. Yes, I do. But I never have driven over the road.
 Q. Is there some reason why you believe that you can't drive over the road?
 A. Oh, I don't — don't like to be away from home all week I suppose, is the only reason I know of. Is it gets very — I just couldn't — `cause a lot of them guys don't take a shower all week long. I couldn't handle that kind of crap. Besides that, I didn't want to drive over the road. If I did want to drive over the road, I'd already be doing it.
Tr. 30-31. (Emphasis added.)
Appellant indicates that he is qualified to drive over the road and simply chooses not to do so.
Lastly, appellant argues that even if he is qualified for an over the road truck driver position, appellant should not be required to take the position. Appellant contends that the position is totally different than what he has done all his life. Appellant asserts that the position of over the road driver changes the nature of his employment to the extent of requiring a doctor or lawyer to change their relative professions. We disagree.
Appellant holds a valid commercial driver's license. Appellant confirmed that there was no physical, mental or emotional reason or difficulty to prevent him from driving over the road. Tr. 31-32. We find that while the hours and conditions involved may change, there is no fundamental difference between appellant's previous truck driving position and over the road driving. Both are within the same profession and require the same license. And appellant possess the skills necessary to do both types of work.
In conclusion, for the reasons stated above and based upon the evidence presented, we find the trial court did not abuse its discretion in denying appellant's motion to modify and/or terminate appellant's spousal support obligation.
Appellant's first assignment of error is overruled.
 II III
In the second assignment of error, appellant contends that the trial court's decision to find appellant in civil contempt was contrary to law, an abuse of discretion, not supported by the evidence and against the manifest weight of the evidence. In the third assignment of error, appellant argues that the trial court's admission and consideration of evidence which occurred after the filing of appellee's Motion for Contempt was an abuse of discretion. We will consider these assignments of error together.
The standard of review of a trial court finding of contempt is abuse of discretion. State ex rel. Ventrone v. Birkel (1981), 65 Ohio St.2d 10. Likewise, the standard of review for the admission of evidence is abuse of discretion. State v. Sage (1987), 31 Ohio St.3d 173. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
The trial court found appellant in contempt for failing to pay spousal support as ordered in the trial court's prior order. Contempt is a disregard or disobedience of an order of a judicial authority. State v.Flinn (1982), 7 Ohio App.3d 294, 295.
Appellant contends that he was unable to make the spousal support payments because he lost his job and had difficulty finding a new job, paying similar wages to those he earned previously. Appellant insinuated that he paid what he could afford to pay. TR 26.
It is axiomatic that a person may not be punished for contempt for failure to pay according to a judicial order if he is financially unable to pay. Lea v. Lea (May 13, 1981), Clinton App. No. 419 and 424, unreported. The inability to financially comply with a court order is a valid defense to a contempt charge. Courtney v. Courtney (1984),16 Ohio App.3d 329, 334. However, we find that the trial court did not abuse its discretion in holding appellant in contempt.
While it is accurate that appellant was nearly in full compliance before losing his job, appellant made the following payments around the time he lost his job in July, 1999:[5]
June, 1999 $553.84
July, 1999 $553.84
August, 1999 $276.92
September, 1999 $0
October, 1999 $600.00
November, 1999 $0
December, 1999 $0
January, 2000 $300.00
February, 2000 $0
March, 2000 $0
April, 2000 $300.00
May, 2000 $0
June, 2000 $0
The record does not support appellant's contention that he paid the spousal support to the extent to which he could afford. Appellant received unemployment benefits during his term of unemployment in the amount of $337.00 per week. In total, appellant received $7,077 in unemployment benefits in 1999. TR 115-116.
Further, appellant testified that while he was unemployed, he did not pay for "rent or anything." TR 120. Appellant's girlfriend, with whom he lives, paid his living expenses.[6] The record indicates that during this time, all that appellant paid were child support payments of $102.00 per week and state and federal taxes, as withheld from his unemployment checks.
Further, once appellant obtained a new position in May, 2000, appellant continued to make no spousal support payments despite his earnings. Appellant testified that he earned "probably 1,500 . . . or . . . 1,800 probably" in May 2000. TR 34. In total, testimony showed that appellant earned $4,886.01 in May and June, 2000. Appellant attempted to defend himself by stating that once he got a new job, he had to get caught up financially. However, appellant presented no bills, statements, or details as to what he had to pay to "catch up."
Lastly, appellant's contention, that he made the spousal support payments as he did because of his unemployment, was undercut by his own testimony. When asked why he did not pay spousal support after obtaining a new position, appellant responded that "Well, the biggest reason I was, I was trying to get caught up. And the other reason is that I didn't see where I should — why I should be held in contempt for something that the other person wasn't doing anything at all and never has done anything that she was supposed to do, why I should pay her.[sic] I just don't understand — I still don't understand it." TR 40-41. Subsequently, when asked why he thought he should not be ordered to continue to pay $600 per month in spousal support, appellant responded: "One reason, I can't afford it, the biggest problem. And I give [sic] her everything in the divorce. I don't see why I should have to keep paying." TR 128.
In light of the testimony and evidence presented, we find that the trial court did not abuse its discretion in finding appellant in contempt.
As to the admission of evidence, the Motion for Contempt was filed June 26, 2000. Appellant argues that the trial court abused its discretion when it admitted evidence concerning acts which occurred after June 26, 2000. The evidence challenged by appellant includes evidence regarding the availability of job opportunities at Coshocton Trucking, Inc. Appellant argues that it was improper for the trial court to admit evidence concerning whether appellant was voluntarily unemployed, voluntarily underemployed or had voluntarily reduced his income.
First, we find that we need not determine if the trial court abused its discretion in admitting the challenged evidence in regards to the Motion for Contempt. Even if this court were to find that the trial court abused its discretion in admitting evidence of events which occurred after June 26, 2000, there was ample evidence, as noted above, to support our holding that the finding of contempt was not an abuse of discretion.
Second, the hearings on appellee's Motion for Contempt and appellant's Motion to Modify/Terminate Spousal Support were combined into one hearing, without objection. The trial court's findings indicate that the evidence regarding job opportunities at Coshocton Trucking, Inc. were used to determine whether a change of circumstance had occurred, requiring a modification or termination of spousal support. See R.C.3105.18(F).[7] As appellant concedes, the trial court did not state that the appellant was being found in contempt for voluntarily reducing his income. Rather, the trial court found appellant in "contempt of a prior order of this court, specifically, the Decree of Divorce May 28, 1999, ordering the [appellant] to pay spousal support to the [appellee] in the amount of $600.00 per month, plus the processing charge, commencing May 30, 1999, and continuing thereafter for a period of ninety-five (95) additional months." Amended Magistrate's Decision as adopted in the April 30, 2001 Judgment Entry of the Coshocton Court of Common Pleas.
Appellant's second and third assignments of error are overruled.
 IV V
In the fourth assignment of error, appellant contends that the trial court's order that appellant pay appellee's attorney fees in the amount of $762.00 as a purge condition of the contempt was contrary to law, an abuse of discretion, not supported by the evidence and was against the manifest weight of the evidence. In the fifth assignment of error, appellant argues that the affidavit submitted by appellee subsequent to the conclusion of the hearing before the Magistrate, in support of attorney fees, was hearsay, not presented pursuant to a proper foundation or authentication and reliance upon the affidavit violated appellant's right to "confront his accusers." Appellant also argues that there was no evidence presented as to whether the attorney fees constituted a reasonable amount.[8] We will consider these assignments of error together.
An award of attorney fees in post-decree domestic relations proceedings is within the sound discretion of the trial court. Rand v. Rand (1985),18 Ohio St.3d 356, 359. Further, "[w]hen the amount of time and work spent on the case by the attorney is evident, an award of attorney fees, even in the absence of specific evidence, is not an abuse of discretion."Babka v. Babka (1992), 83 Ohio App.3d 428. A trial court may use its own knowledge in reviewing the record to determine the reasonableness of attorney fees. Whitaker v. Estate of Whitaker (1995), 105 Ohio App.3d 46,56 (citing Gearig v. Gearig (Mar. 31, 1993), Lucas App. No. L-92-150, unreported, 1993 WL 93525, and Dillon v. Dillon (Sept. 20, 1988), Franklin App. Nos. 88AP-232 and 233, unreported, 1988 WL 99324).
We note that appellant presents no precedent for this court's consideration on any of the issues raised in these assignments of error. It is fundamental that an appellant bears the burden of affirmatively demonstrating error on appeal. Pennant Molding, Inc. v. C J TruckingCo. (1983), 11 Ohio App.3d 248, 251.
However, a review of the record before this court reveals that the trial court did not abuse its discretion in ordering appellant to pay $762.00 in attorney fees as a purge condition. A review of the affidavit and fees awarded, in light of appellee's counsel's performance at the hearing, reveal that the amount of time and work spent on the case was evident. In the case sub judice, we cannot find that the trial court abused its discretion.
Appellant's fourth and fifth assignments of error are overruled.
In the sixth and final assignment of error, appellant argues that the trial court abused its discretion when it denied appellant's motion for a new hearing. We disagree.
On April 2, 2001, appellant filed a "Request for a New Hearing" on the issue of the termination or modification of spousal support. Appellant's motion asserted that appellant had lost the job he had held at the time of the hearing, through no fault of his own. No further information as to the facts were provided, such as the date appellant lost his job.
While not specified in appellant's motion, we understand appellant's Request for a New Hearing to have been brought pursuant to Civil Rule 53(E)(3)(b): "The court shall rule on any objections [to a magistrate's decision]. The court may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter." (Emphasis added)[9]
A trial court's decision to adopt, reject or modify a magistrate's decision or to hold further hearings, will be reversed on appeal only for an abuse of discretion. Wade v. Wade (1996), 113 Ohio App.3d 414, 419. An abuse of discretion implies that the court engaged in arbitrary, unreasonable or unconscionable decision-making. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217.
We find that the trial court did not abuse its discretion in failing to hear additional evidence or hold a new hearing. Testimony at trial demonstrated that appellant would lose his job in November, due to its seasonal nature, and begin again in the Spring. Appellant's motion asserts no new information that was not expected, pursuant to the testimony before the Magistrate.
Appellant's sixth assignment of error is overruled.
The judgment of the Coshocton County Court of Common Pleas is affirmed.
JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Coshocton County Court of Common Pleas is affirmed. Costs to appellant.
Hon. Julie Edwards, P.J. Hon. John Wise, J. Hon. John Boggins, J. concur.
[1] The Amended Magistrate's Decisions was filed on March 1, 2001.
[2] (C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
[3] The trial court explicitly found no change of circumstance as to other factors delineated in R.C. 3105.18(C)(1). However, those findings are not at issue on appeal.
[4] In 1998, appellant made over $38,000.00. At the time of the divorce, appellant's 1999 income was estimated to be $25,400.00. Appellant asserts that his projected yearly income would now be approximately $15,716.00. The trial court made no specific finding regarding appellant's current yearly income. The trial court did find that appellant had earned $13,551.79 in calender year 2000, through the time of the Magistrate's hearing.
[5] In June, 1999, prior to losing his job, appellant was in arrears by $84. TR 71-72.
[6] Appellant testified that he normally paid half of the household expenses, such as rent, groceries and utilities. However, appellant's testimony indicates that the girlfriend paid all of these expenses when appellant was without work. TR 120.
[7] Pursuant to R.C. 3105.18(F), to determine whether a motion to modify or terminate spousal support should be granted based upon a change of circumstances, a trial court must determine whether a decrease in a party's wages were voluntary or not. "[A] change in the circumstances of a party includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses." R.C. 3105.18(F).
[8] Appellee argues that appellant waived this assignment of error by not filing an objection in response to appellant's affidavit. At the conclusion of the hearing before the Magistrate, appellee was instructed to submit an affidavit regarding attorney fees within one week. Appellant objected to the submission of the affidavit after the closing of the hearing. Appellant's objection was overruled by the trial court. Appellant was instructed that he could respond to appellee's affidavit within one week of the submission of the affidavit. TR 145-146. However, appellant failed to respond in any manner to the affidavit submitted. However, the issues were raised, subsequently, in appellant's Objections to the Amended Magistrate's Decision. We find that appellant's actions were sufficient to preserve these issues for our review.
[9] Appellee asserts that appellant's motion was brought pursuant to Civ. R. 59(A). Civil Rule 59(A) sets forth the basis for granting a motion for a new trial. As noted above, we find that appellant's motion was brought pursuant to Civ. R. 53, not Civ. R. 59(A). Civil Rule 59(A) concerns the issue of whether a new trial should be ordered, after a trial court has issued a judgment. Appellant's motion was presented during the pendency of the matter and before the trial court had issued a judgment entry. In fact, the motion was filed on the same day as appellant filed Objections to the Magistrate's Decision.