OPINION
{¶ 1} Defendant-appellant Marion L. Espenschied appeals the December 4, 2001, Judgment Entry of the Tuscarawas County Court of Common Pleas which found appellant to be in contempt of court and interpreted a prior Divorce Decree to require appellant to simultaneously pay spousal support and share pension benefits with plaintiff-appellee Joyce M. Espenschied.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Joyce M. Espenschied [hereinafter appellee] and Marion L. Espenschied [hereinafter appellant] were married February 5, 1966, and three children were born as issue of the marriage. All three children are adults.
 {¶ 3} The parties were divorced on September 9, 1997. At the time of the divorce, both parties were employed. Appellant was employed as a machinist for A.K. Steel and appellee was employed by Bank One. Each had a pension with his or her employer. The pensions of each party were valued as of January 31, 1996. The parties stipulated to an agreement that resolved matters concerning spousal support and property division. That agreement was incorporated into the Divorce Decree.[1]
 {¶ 4} On June 20, 2000, appellant was involuntarily terminated from his employment and forced into early retirement when the plant at which he worked was closed. Appellant's employer settled with the union to pay supplementary benefits to the employees who were losing their jobs. In September, 2000, appellant began receiving benefits in the amount of $981.69, identified as "pension", and $400.00, identified as "supplement." However, the plan administrator of appellant's benefits withheld $439.74 as appellee's share of appellant's pension from appellant's check and retained those funds in escrow for appellee. However, the funds were not disbursed to appellee because no QDRO (Qualified Domestic Relations Order) was in place.
 {¶ 5} Appellant stopped paying spousal support. Appellee testified that she had not received spousal support since September, 2000.
 {¶ 6} On April 17, 2001, appellee filed a Motion for Contempt of Court based upon appellant's failure to pay spousal support. A hearing was held May 7, 2001, before a Magistrate. The Magistrate recommended that appellant be found in contempt of court for failing to pay spousal support and provided that appellant could purge his contempt by payment to appellee of the spousal support due. Further, the Magistrate recommended that a QDRO be drafted stating that appellee is "entitled to one-half of the monthly payment due to Mr. Esenschied as a result of his retirement." Magistrate's Order, May 10, 2001.
 {¶ 7} Appellant filed Objections to the Magistrate's Decision. Appellant objected to paying both spousal support and pension benefits, arguing that the pension benefits were not to begin until spousal support payments ended.
 {¶ 8} On November 19, 2001, appellant's Objections were heard by the trial court. By Judgment Entry filed December 4, 2001, the trial court overruled appellant's Objections and adopted the Magistrate's Findings of Fact and Conclusions of Law.
 {¶ 9} It is from the December 4, 2001, Judgment Entry that appellant appeals, raising the following assignments of error:
 {¶ 10} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING THE APPELLANT, HUSBAND, IN CONTEMPT FOR FAILING TO PAY SPOUSAL SUPPORT.
 {¶ 11} "II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ORDERING THE APPELLANT TO PAY BOTH SPOUSAL SUPPORT AND $420.00 PER MONTH OF HIS SUPPLEMENTARY BENEFITS TO THE APPELLEE."
 I {¶ 12} In the first assignment of error, appellant argues that the trial court committed reversible error in finding appellant in contempt for failing to pay spousal support. Appellant argues that he was unable to pay the spousal support when his employment was involuntarily terminated and when more than the amount of the spousal support payment was wrongfully withheld from his pension for his ex-wife's benefit. We disagree.
 {¶ 13} The trial court found appellant to be in indirect, civil contempt of court for failing to pay spousal support as ordered in the Divorce Decree. Because the nature of the contempt is civil, "willful disobedience", or intent, is not a necessary element. Pugh v. Pugh,15 Ohio St.3d 136, 140, 472 N.E.2d 1085; Pedone v. Pedone (1983),11 Ohio App.3d 164, 165, 463 N.E.2d 656. "It is irrelevant that the transgressing party does not intend to violate the court order. If the dictates of the judicial decree are not followed, a contempt citation will result." Pedone, 11 Ohio App.3d at 165.
 {¶ 14} However, inability to pay support is a valid defense in a contempt proceeding. Courtney v. Courtney (1984), 16 Ohio App.3d 329,334, 475 N.E.2d 1284. The party who failed to comply with the court order to pay support bears the burden of proving an inability to pay. SeePugh, 15 Ohio St.3d at 140; State ex rel. Cook v. Cook (1902),66 Ohio St. 566, 64 N.E. 567, paragraph one of the syllabus; Collins v.Collins (Aug. 22, 1995), Athens App. No. 95CA1661.
 {¶ 15} We will not reverse a contempt sanction absent an abuse of discretion by the trial court. State ex rel. Ventrone v. Birkel (1981),65 Ohio St.2d 10, 11, 417 N.E.2d 1249. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140.
 {¶ 16} We find that the trial court did not abuse its discretion when it found appellant in indirect, civil contempt. Appellant did not follow the dictates of the prior Order and failed to prove an inability to pay.
 {¶ 17} While testifying at the hearing before the Magistrate, appellant acknowledged that he was aware that he was to make monthly spousal support payments to appellee. Appellant stopped making those payments. Further, while appellant contends that more than the amount of the spousal support payment was being withheld from his monthly retirement check for the benefit of appellee, appellant knew appellee was not receiving that money.
 {¶ 18} On appeal, appellant argues that he was unable to pay the spousal support because he was unemployed, "fifty-six years old . . . who [had a] twenty percent disability with a back injury." However, at the hearing before the Magistrate, appellant testified that he stopped paying spousal support on the advice of A. K. Steel. Appellant claimed that he spoke with people at A. K. Steel and "they" told appellant that he had to get the QDRO finalized. According to appellant, the person he spoke with suggested that he quit paying spousal support to "force this [issue] to a head." Transcript of Proceedings, May 7, 2001, pg. 22. Appellant testified that that is why he stopped paying spousal support. Appellant never testified that he stopped paying the spousal support because he was financially unable to do so.
 {¶ 19} Upon review of the record, we cannot say that the trial court abused its discretion in finding appellant to be in indirect, civil contempt.
 {¶ 20} Appellant's first assignment of error is overruled.
 II {¶ 21} In the second assignment of error, appellant contends the trial court committed reversible error when it ordered appellant to pay both monthly spousal support and $420.00 per month of appellant's supplemental benefits to appellee. Appellant argues the trial court erred when it interpreted the prior divorce decree to require appellant to pay both spousal support to appellee until August, 2006, and half of what appellant characterizes as supplementary benefits, payable due to appellant's forced, early retirement. Appellant contends that, according to the terms of the divorce decree, the appellant was to pay spousal support until August, 2006, at which point appellee would receive $420.00 per month as appellee's share of appellant's pension. Appellant contends that despite his early retirement and current receipt of pension benefits, he should only pay the spousal support and need not provide appellee with $420.00 of his pension benefits until August, 2006.
 {¶ 22} The Divorce Decree contained the following language:
 {¶ 23} "10. The pensions of the parties will be divided equally when payable Marion Espenschied will begin collecting August, 2006. [sic] The amount to be divided is determined as of January 31, 1996, or full monthly pension benefit of $840.00. Consequently, Joyce Espenschied shall be eligible to collect the sum of $420.00 as being one-half of the marital portion of Marion Espenschied's pension benefit. Marion Espenschied will be eligible for payments before Joyce Espenschied. Joyce Espenschied will begin collecting her pension October 1, 2010. Each party shall receive one-half of his payment valued as of January 31, 1996, in the full amount of $840.00. At such time as Joyce Espenschied is able to collect her pension, her payment shall be shared equally with Marion Espenschied. Joyce Espenschied's pension is fixed with Marion Espenschied. Joyce Esenschied's pension is fixed amount of $195.00. [sic] At such time as Joyce Espenschied is able to collect her pension, her payment shall be shared equally with Marion Espenschied. The equal sharing shall be accomplished by a reduction in the amount Joyce Espenschied receives from the pension of Marion Espenschied in the amount of $97.50. Consequently, beginning October 1, 2010, Joyce will begin to receive $322.50 per month. The parties will prepare the appropriate orders for division of the pension;
 {¶ 24} "11. Spousal support shall be paid by Marion Espenschied directly to Joyce Espenschied in the amount of $250.00 per month. Said support shall be payable for a period of 10 years which is until August, 2006. Said support shall terminate upon the death of either party, the remarriage of Joyce Espenschied, or upon her cohabitation with another person, which involves the sharing of expenses and sexual activity; . . ."
 {¶ 25} In its December 4, 2001, Judgment Entry, the trial court held as follows:
 {¶ 26} ". . . The Judgment Entry memorializing the agreement of the parties is unequivocal, Plaintiff shall receive one-half (1/2) of the pension when it is payable and Plaintiff shall receive spousal support until August, 2006. The spousal support provision does not require termination of spousal support upon the retirement of Defendant. Likewise, the QDRO, drafted by Defendant's Counsel, states that Plaintiff will receive her one-half (1/2) share of Defendant's pension when Defendant begins collecting said pension. The QDRO is unambiguous and does not indicate that Plaintiff should receive only $250.00 per month from Defendant's pension until August, 2006."
 {¶ 27} We find that the trial court did not err in interpreting Paragraphs 10 and 11 of the Divorce Decree to establish independent provisions for spousal support and pension benefits. The Decree does not expressly indicate that the spousal support and the pension benefits are interdependent or mutually exclusive. The Decree unambiguously orders appellant to pay spousal support until August, 2006. The Decree does not state that the trial court maintains jurisdiction to modify spousal support. Further, the Decree states that the pensions of the parties will be divided equally when payable.
 {¶ 28} The trial court did not err when it ordered appellant to pay spousal support until August, 2006, and ordered appellee receive her share of appellant's pension benefits immediately.
 {¶ 29} Arguably a question remains as to how much of appellant's pension benefits appellee is entitled to receive. Appellant and appellee interpret the Divorce Decree to entitle appellee to $420.00 per month. A review of the record reveals the Divorce Decree provided the amount of the appellant's pension to be divided was determined as of January 31, 1996. It provided appellee would receive a fixed sum of $420.00, representing her share of appellant's pension earned during the marriage. However, the trial court held that appellee "is entitled to one-half (1/2) of the monthly payment due to Mr. Espenschied as a result of the Defendant's retirement." December 4, 2001, Judgment Entry.
 {¶ 30} Appellant testified a portion of the benefits he currently recieves are supplementary or severance benefit received as a result of the plant closing and union negotiations. While pension and retirement benefits acquired during the course of a marriage are marital assets to be divided, severance payments intended to compensate for wages lost after divorce are not marital property. McClure v. McClure (1994),98 Ohio App.3d 27, 647 N.E.2d 832. Appellee is not entitled to a share of such a severance package, only her half of the pension, as ordered in the Divorce Decree.
 {¶ 31} Appellant's second assignment of error is overruled in that the trial court did not err in interpreting the Divorce Decree to require appellant to pay spousal support until August, 2006, and to provide appellee with her share of appellant's pension benefits now that the pension has become payable. Furthermore, to avoid any uncertainty as to interpretation of the trial court's judgment, this Court orders pursuant to App.R. 12(B), the amount due appellee from appellant's pension is $420.00 per month.
 {¶ 32} The judgment of the Tuscarawas County Court of Common Pleas is affirmed in part and modified in part.
By Hoffman, P.J. and Gwin, J. concur.
Edwards, J. dissents.
topic: child support.
[1] The exact language of the Divorce Decree will be provided supra in the analysis of appellant's first assignment of error.