DECISION AND JUDGMENT ENTRY
{¶ 1} This is an accelerated appeal from a judgment of the Huron County Court of Common Pleas wherein appellant, Joe F. Lillo, was held in contempt for failure to cooperate with the auction sale of the marital property per his divorce decree and a prior court order. For the reasons stated herein, this court affirms the judgment of the trial court.
 {¶ 2} The following facts are relevant to this appeal. On January 3, 2003, appellant was found in contempt and sentenced to ten days in jail to be purged upon cooperation with the sale of the marital property. On July 9, 2003, appellee, Carla Lillo, filed a second contempt action and an additional motion to impose sanctions from the first contempt because of appellant's continued refusal to cooperate with the sale.
 {¶ 3} On August 13, 2003, a hearing was held on both the new and old contempt citations. Appellant attended the hearing without counsel. After the magistrate reviewed the possible consequences of a finding of contempt, the following exchange occurred:
 {¶ 4} "THE COURT: I note you're here today without an attorney. What are your intentions with regard to an attorney? Do you intend to go forward today without an attorney?
 {¶ 5} "MR. LILLO: No. Uh-huh.
 {¶ 6} "THE COURT: You have no attorney present, Mr. Lillo. What's a — what the deal?
 {¶ 7} "MR. LILLO: I just thought, I just took it for granted that he knew about it, that he was going to be here.
 {¶ 8} "THE COURT: Why would you think that, Mr. Lillo?
 {¶ 9} "MR. LILLO: I just thought with me getting these papers, that you sent them to the attorney, the same papers — paperwork informing that he's got to be here.
 {¶ 10} "THE COURT: I'm not seeing anything on any of the papers filed with regard to this motion, Mr. Lillo, that would indicate that any other attorneys have been notified, save for Mr. Weisenberger, who of course, filed this motion.
 {¶ 11} So, I'm not sure where you got that idea and I'm particularly not sure where you got that idea in light of the fact that you were before this Court previously, back in November and December of last year, and the first time you came before this Court on that last motion on November 26th, [your attorney] didn't automatically appear. You would have had to have contacted him and he came to Court with you on that day and then asked for a continuance at that point in time.
 {¶ 12} So, I'm wondering where you got that idea, Mr. Lillo?
 {¶ 13} "MR. LILLO: I just took for — I'm, you know, I'm new to the court system, really, and I just thought he would be here. I only —
 {¶ 14} "THE COURT: Are you asking that this matter be postponed, Mr. Lillo, for you to have an opportunity to talk with your attorney?
 {¶ 15} "MR. LILLO: Yeah.
 {¶ 16} "THE COURT: Mr. Weisenberger, plaintiff's position?
 {¶ 17} "MR. WEISENBERGER: We would object to that, Your Honor.
 {¶ 18} Time is of the essence here. The situation is that the parties were court ordered to do certain things, which included selling the marital property * * *.
 {¶ 19} The auction went forward, was sold on May 13th of 2003 * * *. The long and short of it is, is that Mr. Lillo did not sign the purchase agreement, has not signed anything that would allow the sale to go through.
 {¶ 20} Now he was found in contempt once already for that type of conduct, and not participating and cooperating in giving the house set up for auction. We found him in contempt on that.
 {¶ 21} The auction went through. He won't sign a purchase agreement or anything else, so that the land can be transferred.
 {¶ 22} And as a result of his actions, both of these parties are standing in gasoline, insofar as their relationship with the buyer at the auction is concerned. * * *
 {¶ 23} * * * I think for this matter to be continued places my client, and quite frankly even Mr. Lillo in a very tenuous situation in terms of a lawsuit on breach of contract, and not to mention the clear violation of the Court's orders. * * *
 {¶ 24} "THE COURT: Mr. Lillo, I'm going to deny your request for a continuance. This matter is going forward today. The reason it's going forward today is that you were served on August 2nd,[1] you're telling me you've made absolutely no efforts to have your attorney present to represent you today, and in addition your statement that you just assumed that your attorney would be here makes absolutely no sense in light of the fact that you were before this Court on this same matter late last year and at that point in time you contacted an attorney to represent you at the first hearing on the contempt matter * * *.
 {¶ 25} So what you're telling me, I'm not buying it, Mr. Lillo."
 {¶ 26} The magistrate then proceeded to explain that the plaintiff had the burden of going forward as well as what the procedure would be for the hearing. At the conclusion of the hearing, the magistrate found that appellant had failed to cooperate with the sale of the marital property, a purge condition for the first contempt, and sentenced appellant to serve the ten day jail sentence on five consecutive weekends starting on September 5, 2003, for the first contempt. Additionally, the magistrate ordered a 30 day jail sentence to be purged upon cooperation with the sale of the marital property. Appellant filed timely objections to the magistrate's decision which were overruled by the trial court. Thereafter, appellant cooperated with the sale of the marital property and purged the 30 day jail sentence.
 {¶ 27} Appellant filed a timely notice of appeal[2] and asserts two assignments of error. In his first assignment of error, appellant argues that he was deprived of his right to counsel and due process.
 {¶ 28} Contempt is defined as a disregard of, or disobedience of, an order or command of judicial authority. First Bank ofMarietta v. Mascrete, Inc. (1998), 125 Ohio App.3d 257, 263. The Ohio Supreme Court has held that "since the primary interest involved in a contempt proceeding is the authority and proper functioning of the court, great reliance should be placed upon the discretion of the [court]." Denovchek v. Trumbull Cty. Bd.of Commrs. (1988), 36 Ohio St.3d 14, 16. Thus, "the court that issued the order sought to be enforced is in the best position to determine if that order has been disobeyed." State ex rel.Bitter v. Missig (1995), 72 Ohio St.3d 249, 252. As such, a trial court's finding of contempt will not be disturbed on appeal absent an abuse of discretion. Id. An "abuse of discretion connotes that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 29} Courts classify contempt as either direct or indirect. Direct contempt involves "misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice." R.C. 2705.01. In contrast, indirect contempt involves acts occurring outside the presence of the court that demonstrate a lack of respect for the court or its lawful orders. R.C.2705.02. Acts in direct contempt of court may be summarily punished. R.C. 2705.01. However, when the contemptuous actions occur outside the presence of the court, the court must afford the accused a hearing, at which he will have an opportunity to be heard, by himself or counsel. R.C. 2705.03.
 {¶ 30} Beyond the classification of contempt as direct or indirect, contempt may be classified as either civil or criminal. This distinction depends largely upon the character and purpose of the punishment imposed. In the case of civil contempt, the punishment is remedial or coercive, for the benefit of the complainant. Brown v. Executive 200, Inc. (1980),64 Ohio St.2d 250, 253. The contemnor is said to carry the keys of his prison in his own pocket, as he will be free if he complies with the order of the court. Id. In contrast, the punishment in a criminal contempt action generally consists of an unconditional prison sentence. Id. at 254. Imprisonment for criminal contempt serves as punishment for a completed act of disobedience, vindicating the authority of the court. Id.
 {¶ 31} The trial court imposed an unconditional ten-day jail sentence upon appellant. The trial court imposed this sentence strictly as a punishment for appellant's disobedience of the prior order of the court. Thus, the ten-day unconditional jail sentence was punishment for indirect criminal contempt.
 {¶ 32} As noted by the Ohio Supreme Court, "[t]he most important consequences arising from this classification of contempts [as either civil or criminal] is that many of the significant constitutional safeguards required in criminal trials are also present in criminal contempt proceedings." Brown,64 Ohio St.2d at 252. Perhaps the most significant of these rights is the contemnor's right to due process. Winkler v. Winkler
(1991), 81 Ohio App.3d 199, 202. The right to due process encompasses the right of the accused to be advised of the charges against him, to have a reasonable opportunity to meet the charges by way of explanation or defense, and the opportunity to call other witnesses on his behalf. See, In re Yeauger (1992),83 Ohio App.3d 493, 497. In addition to the aforementioned rights, constitutional procedural due process requires that one charged with criminal contempt have the right to be represented by counsel. Courtney v. Courtney (1984), 16 Ohio App.3d 329, 332. In a criminal contempt proceeding, a contemnor must knowingly and voluntarily waive this right. Garfield Hts. v. Stefaniuk
(1998), 127 Ohio App.3d 293, 296-97.
 {¶ 33} As discussed above, appellant appeared without counsel at the hearing on the contempt motion. Although appellant argues that he was deprived of his right to counsel and did not waive his right to counsel, this court and other appellate courts have focused not upon the waiver of counsel, but rather on whether the trial court abused its discretion in denying a postponement or continuance. For example, in State v. Terrell (Mar. 31, 1998), 6th Dist. No. L-97-1040, this court stated:
 {¶ 34} "In the case before us, the trial court's denial of Terrell's request for a postponement resulted in the defendant representing himself pro se. Although we cannot find Terrell waived his right to counsel, we can also find no abuse of discretion by the trial court. (Citations omitted.) Even though Terrell alleged his counsel was `incompetent,' the record demonstrates, and the trial court found, that McNulty had not neglected his duty to his client. Considering the fact that appellant had ample opportunity to request new counsel prior to trial and the analysis of the situation undertaken by the court, we cannot say the trial court, upon receiving such a request on the day of trial, abused its discretion in denying Terrell's request for a postponement and requiring the defendant to proceed pro se."[3]
 {¶ 35} The determination whether or not to grant a continuance lies within the sound discretion of the trial court and will not be reversed absent a showing that the decision was arbitrary, unreasonable, or unconscionable. State v. Unger
(1981), 67 Ohio St.2d 65, 67. "In evaluating a motion for continuance, a court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to the litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." Id. at 67-68. Moreover, "a defendant may not be permitted to be reasonably perceived as taking advantage of the trial court by claiming his right to counsel in order to frustrate or delay the judicial process." State v. Hook (1986), 33 Ohio App.3d 101,103-104 (a trial court may infer waiver of right to counsel when defendant refuses to take effective action to obtain counsel).
 {¶ 36} Under the circumstances in this case, this court finds that the trial court did not err in denying appellant's request for a continuance which resulted in appellant proceeding pro se. Appellant received notice regarding his right to counsel and the possible consequence if he failed to make a good faith effort to retain or obtain counsel. Appellant had been before the same court on another contempt motion and had retained counsel with him at that hearing.
 {¶ 37} Accordingly, appellant's first assignment of error is found not well-taken.
 {¶ 38} In his second assignment of error, appellant argues that the trial court imposed an unlawful criminal contempt penalty when it found him guilty by clear and convincing evidence. In a criminal contempt proceeding, proof of guilt beyond a reasonable doubt is required. Brown,64 Ohio St.2d 250, syllabus. A criminal conviction must be based upon proof sufficient to convince the trier of fact of guilt beyond a reasonable doubt. As the Ohio Supreme Court has explained inState v. Thompkins (1997), 78 Ohio St.3d 380, 386, "sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a [judgment of conviction] is a question of law." To reverse a conviction for insufficient evidence, a reviewing court must be persuaded, after reviewing the evidence in a light most favorable to the prosecution, that no rational trier of fact could have found the elements of the crime beyond a reasonable doubt. State v. Waddy (1992), 63 Ohio St.3d 424, 430, certiorari denied (1992), 506 U.S. 921.
 {¶ 39} In an action for criminal contempt, the court must consider the totality of the circumstances and ascertain whether the contemnor had the intent to obstruct the administration of justice or disobey an order of the court. DeMoss v. Lappin
(June 15, 1994), 9th Dist. Nos. 16428 and 16566. Upon this court's review of the transcript of the hearing, we find there was sufficient evidence for the trial court to find appellant in contempt. The auctioneer of the marital property and appellant's ex-wife both testified as to appellant's refusal to sign the real estate purchase agreement after the auction. Appellant had been ordered to actively participate in the sale of the marital property. Although the trial court phrased its finding in terms of clear and convincing evidence, this court finds that there was sufficient evidence to conclude beyond a reasonable doubt that appellant intended to defy the court in refusing to sign the purchase agreement. Thus, the trial court's phrasing of its finding of clear and convincing evidence was harmless error. Crim.R. 52(A).
 {¶ 40} Accordingly, appellant's second assignment of error is found not well-taken.
 {¶ 41} On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Huron County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal. See App.R. 24.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, P.J., Knepper, J., Singer, J., Concur.
[1] {¶ a} Appellant was personally served with a "SUMMONS FOR CONTEMPT" which included the following language:
{¶ b} "(2) You have a right to counsel, and if you believe you are indigent, you must apply for a public defender or court appointed counsel within three (3) business days after receipt of summons. The Huron County Public Defender's Office is located at 16 East Main Street, 2nd Floor, Norwalk, Ohio 44857; telephone number is (419) 668-3702.
{¶ c} "(3) The court may refuse to grant a continuance atthe time of the hearing for the purpose of obtaining counsel ifyou fail to make a good faith effort to retain counsel or obtaina public defender." (Emphasis added.)
[2] On June 15, 2004, this court ordered appellant to submit a memorandum in support of this court's jurisdiction as it appeared that, based upon the record, the appeal might be moot as the record was not clear whether or not appellant had served his sentence. On July 13, 2004, appellant submitted a memorandum which established that he has not served the sentence imposed.
[3] See, also, State v. Taylor (Oct. 9, 1997), 8th Dist. No. 71059 (trial court had discretion to favor administration of justice over defendant's desire for a new attorney in denying motion for a continuance); State v. Edsall (1996),113 Ohio App.3d 337, 340 ("a request for a continuance `cannot be used as a vehicle to frustrate the orderly administration of justice.'");Village of Loudonville v. McClure (June 8, 1990), 5th Dist. No. CA-952 (trial court acted within its discretion in denying continuance on day of trial when defendant failed to engage counsel prior to date of trial which was sixteen days after arraignment.); State v. Crebs (1987), 42 Ohio App.3d 50, 52
(second motion for continuance was an unreasonable request to delay trial when defendant failed to take effective action to obtain counsel).