DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal is from the June 30, 2004 judgment of the Fulton County Court of Common Pleas, which found both parties in contempt of court and ordered the parties to execute a revised Qualified Domestic Relations Order (QDRO). Upon consideration of the assignments of error, we reverse the decision of the lower court in part. Appellant, Patricia M. Knisley, asserts the following assignments of error on appeal:
 {¶ 2} 1. "The trial court erred in not granting plaintiff/appellant a continuance of the hearing to adequately prepare a defense to contempt charges."
 {¶ 3} 2. "Plaintiff/appellant's constitutional rights were violated at the hearing of this cause because she was foreclosed from providing a defense."
 {¶ 4} 3. "A finding of contempt against plaintiff/appellant was not warranted on the facts of this case."
 {¶ 5} 4. "The trial court erred in its purge provision by not giving plaintiff/appellant the opportunity to comply with the same before incarceration."
 {¶ 6} 5. "The trial court erred in ordering plaintiff/appellant to sign a QDRO, which did not contain language consistent with the decree of dissolution of marriage."
 {¶ 7} The parties' marriage was dissolved by a judgment entered January 25, 1999. A court-approved settlement agreement between the parties controlled the division of property and financial agreements regarding future expenses for their children. Appellee was ordered to pay child support of $650 per child each month, for a total child support of $2,600 per month.
 {¶ 8} Since the time of the dissolution, there have been numerous motions filed by the parties relating to the visitation of the children and appellee's continual failure to meet his support obligations. The issues raised in this motion arose from a motion filed by appellant on September 23, 2003, to enforce the financial provisions of the dissolution decree that had arisen since the date of the court's last judgment entry. A hearing was scheduled for October 20, 2003, but was continued to December 22, 2003, at appellee's request. On December 4, 2003, appellee moved to show cause why appellant had not provided visitation with the children.
 {¶ 9} At the December 22, 2003, hearing, appellant and appellee testified. In its judgment dated January 12, 2004, the court found that appellee had not complied with the court's prior order to pay certain financial obligations. However, the court also found that appellee does not have the financial ability to pay all the obligations previously ordered. During the hearing, appellee testified that the visitation issues were being mediated and that he was withdrawing his motion on that issue. However, the court found in its judgment entry that appellant was not "* * * helpful in facilitating [appellee's] attempt to re-engage and develop a parental relationship with his children." In conclusion, the court ordered appellee to pay certain expenses incurred for the benefit of his children and comply with the previous order of the court.
 {¶ 10} On April 26, 2004, appellant moved to impose sanctions upon appellee for failure to comply with the obligations listed in the January 12, 2004 order. A hearing was scheduled for June 28, 2004. On June 16, 2004, appellee moved for enforcement of the dissolution decree and prior court orders regarding visitation.
 {¶ 11} The issues raised in both motions were considered by the court in a hearing held on June 28, 2004. Both parties were unrepresented at the hearing. Appellant requested a continuance to prepare a defense to the contempt charges and to enable the children, who were then teenagers, and their psychologists to be present. The court denied appellant's request. Both parties testified and presented other evidence at the hearing.
 {¶ 12} Following the hearing, the court concluded that the issues in this case continue to be unresolved. Therefore, the court sentenced appellee to 30 days of incarceration for contempt of court unless he produced un-redacted tax forms as previously ordered. Furthermore, the court found that appellant had violated the "flexibility" and "enjoyable opportunities for visitation" provisions of the Separation Agreement and the Lucas County Parenting Plan and Companionship Schedule. The court also found that appellant had violated the terms of the Separation Agreement because she had interfered with appellee's employment by contacting his employers to discover financial information. The court sentenced appellant to 30 days incarceration for contempt of court, which she could purge by allowing appellee visitation with his children as previously ordered by the court. At the close of the hearing on June 28, 2004, the court had the parties taken to jail where both were incarcerated for three days.
 {¶ 13} In its June 30, 2004 judgment, the court set forth its findings of contempt. Furthermore, the court held that the parties should execute a revised QDRO. Appellant appealed from this order. Appellee has not filed a responsive brief.
 {¶ 14} We have consolidated appellant's first and second assignments of error. Appellant contends that the trial court abused its discretion when it refused to give her additional time to prepare for a contempt hearing. She also asserts that the court denied her due process rights by holding a hearing on the contempt charges when she had only ten days notice of the charges and all the parties involved were unable to testify.
 {¶ 15} The trial court exercises its discretion in determining whether to grant a continuance. Therefore, its decision will not be reversed on appeal unless we find that the court's decision was arbitrary, unreasonable, or unconscionable. Lillo v. Lillo, 6th Dist. App. No. H-03-044, 2004-Ohio-4848, at ¶ 35, citing State v. Unger (1981),67 Ohio St.2d 65, 67. Furthermore, when allegations of contempt have been made, the accused is entitled to a hearing and an opportunity to present a defense and to call witnesses on his behalf. R.C. 2705.03.
 {¶ 16} We find that the trial court clearly abused its discretion in this case. Appellant learned of the contempt charges only ten days prior to the hearing. While appellee had raised issues regarding visitation in the past, the issues had been resolved by sending the parties to mediation. Appellant had never been found in contempt of court on a visitation issue.
 {¶ 17} We conclude that the court's order finding appellant in contempt without providing an opportunity for all of the parties involved to testify constitutes an abuse of discretion. Unlike the support issues, the underlying causes for the visitation issues are factually complicated and cannot be determined without input from all of the parties involved. The trial court should have had the children, who are now all teenagers, and the psychologist involved in the mediations present at the hearing to determine whether an indirect contempt of court had occurred.
 {¶ 18} Appellant's first and second assignments of error are well-taken.
 {¶ 19} In her third assignment of error, appellant argues that a finding of contempt was not warranted based upon the evidence presented in this case. Because we have concluded that the trial court erred in conducting a hearing and a new hearing must be held, we find this assignment of error moot.
 {¶ 20} In her fourth assignment of error, appellant argues that the trial court erred by immediately incarcerating her following a finding that she was in contempt of court. Generally, we would also find this issue to be moot because we have already determined that the trial court erred in conducting the contempt hearing. However, we feel compelled to address this issue because of the severe consequences of the court's error.
 {¶ 21} The trial court found appellant to be in civil contempt of its prior orders regarding visitation. It sentenced her to 30 days of incarceration, suspended 27 days of the sentence, and provided her an opportunity to purge herself of the contempt if she assured the court that she would comply with the visitation orders of the court. However, the court immediately incarcerated appellant.
 {¶ 22} This court has repeatedly held that a person found in civil contempt must be given the opportunity to purge the contempt. Kim v.Kim, 6th Dist. App. No. L-02-1179, 2003-Ohio-4969, at ¶ 11, and Ortmannv. Ortmann, (Mar. 22, 2002), 6th Dist. App. No. L-01-1045, at 8. Cf.,Ruetz v. Ruetz, 6th Dist. App. Nos. L-02-1153, L-02-1037, 2003-Ohio-4091, at ¶ 34 (the opportunity to purge need not be given after having been found in contempt for repeated failures to comply with the orders of the court). Only when the court finds a person in criminal contempt is the opportunity to purge unnecessary. State v. Miller, 5th Dist. App. No. 02 CA 16, 2003-Ohio-948, at ¶ 28.
 {¶ 23} By immediately incarcerating appellant without giving her the opportunity to carry out the condition for purging her contempt as provided by the court, the court in effect imposed sanctions for a criminal contempt. However, the court never provided appellant with the constitutional safeguards applicable to criminal contempt charges. The court clearly abused its contempt powers in this case.
 {¶ 24} Appellant's fourth assignment of error is found well-taken.
 {¶ 25} In her fifth assignment of error, appellant argues that the trial court erred by permitting appellee to substitute a revised QDRO for one previously executed by appellee's attorney on appellant's behalf.
 {¶ 26} In the separation agreement incorporated into the dissolution decree dated January 25, 1999, the court ordered appellee to "assign to [appellant], through proper Domestic Relations Orders, fifty percent (50%) of his retirement benefits from the State of Vermont and fifty percent (50%) of the marital portion of his retirement benefits from the State of Ohio; provided, however, that should either jurisdiction refuse to recognize the validity or enforceability of such Orders, the parties agree that the Court which approves this agreement shall retain jurisdiction to award spousal support in an appropriate amount to give effect to this provision; additionally, [appellee] shall designate the four children as sole beneficiaries of his survival benefits under his State of Ohio STRS retirement plan and under his State of Vermont retirement plan."
 {¶ 27} Appellant moved the court in 2002 to enforce the decree's provisions that appellee execute a QDRO regarding the Vermont retirement plan because appellee had never filed a QDRO as required by the decree. In a judgment dated October 18, 2002, the court determined that appellant's motion regarding appellee's failure to file a QDRO was moot but without explanation.
 {¶ 28} After contacting the agency and determining that no QDRO had been filed, appellant moved again on December 24, 2002, for execution of her proposed QDRO. She asserted that her Vermont counsel had prepared the order and that she would file it with the agency. On February 21, 2003, appellee's attorney signed the QDRO on behalf of appellee. Therefore, in its April 9, 2003 judgment the court again found this issue to be moot. As discussed below, this QDRO was filed with the agency, but was apparently not accepted.
 {¶ 29} On September 23, 2003, appellant again moved for enforcement of the separation agreement provision requiring appellee to file a QDRO. In its January 9, 2004 judgment, the court ordered that the QDRO furnished by appellee through his attorney comply with Vermont law.
 {¶ 30} In a motion for enforcement of the dissolution decree filed by appellee on June 16, 2004, appellee alleged that he provided the court and appellant with a copy of a letter from the Vermont State Teachers Retirement System stating that the QDRO he prepared "meets the language of the dissolution" decree because it limits appellant's benefits to 50 percent of benefits earned until the date of the dissolution decree. This letter was not made part of the record.
 {¶ 31} At the June 28, 2004 hearing, appellee testified that he was contacted by the Vermont State Teachers Retirement System (STRS) and was informed that the original QDRO prepared by appellant's counsel and executed by appellee's attorney on his behalf was not enforceable because of one section. Therefore, appellee drafted a new QDRO with the advice from the Vermont STRS and forwarded it to his attorney for his review. Their intent was to ensure that the benefit would cover only funds earned only up until the date of the dissolution decree.
 {¶ 32} Appellant argued that the new QDRO made the children beneficiaries of only the marital portion of the funds and not the entire fund as originally agreed. In its June 30, 2004 judgment, the court found that the QDRO drafted by appellee's attorney "is the more legal, proper, and likely QDRO, thereby fulfilling the intent of the parties, and the same should and shall be executed by the parties, in preference to the draft QDRO prepared by [appellant's] attorney."
 {¶ 33} On appeal, appellant asserts that the revised QDRO alters the dissolution decree because it names appellee's current wife as the sole survivor beneficiary, with the direction to share the proceeds from the marital portion with appellant's and appellee's children.
 {¶ 34} Upon a review of the record, the hearing transcript, and the exhibits in this case, we find that we are unable to determine the court's basis for concluding that the revised QDRO "is the more legal, proper, and likely QDRO" and that it fulfills the intent of the parties. Clearly, the revised QDRO names the children as beneficiaries of only a portion of the survivor benefits under the plan. This alone appears contrary to the unambiguous language of the decree. In addition, the new QDRO requires that the children's portion of the survivorship benefit be paid to appellee's current spouse who will distribute the funds to the children. The QDRO also requires that the children must annually declare their desire to continue to receive benefits assigned to them. These additional terms were never part of the dissolution decree.
 {¶ 35} While appellee alleged that the changes in the QDRO were required by Vermont law or the Vermont State Retirement Teachers System, there is no evidence in the record to support this statement. Therefore, we find that we must remand this case to the lower court for further clarification of its order before we can determine if the court's decision was correct as a matter of law.
 {¶ 36} Having found that the trial court did commit error prejudicial to appellant and that substantial justice has not been done, the judgment of the Fulton County Court of Common Pleas is reversed in part. The judgment is reversed only as to the ruling that appellant was found in contempt of court and incarcerated without an opportunity to purge her contempt. This case is remanded to the trial court for a contempt hearing that affords appellant her due process rights. Furthermore, the finding of the court that the revised QDRO should be executed by the parties is remanded for the court to enter an judgment consistent with this decision. That part of the judgment finding appellee in contempt is not altered by this decision. Pursuant to App.R. 24, appellee is hereby ordered to pay the court costs incurred on appeal.
AFFIRMED IN PART AND REVERSED IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Singer, P.J., Glasser, J. CONCUR.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.